MARILLYN D. TERPIL AND FRANCIS E. TERPIL, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Terpil v. Commissioner
Docket No. 22903-80.
United States Tax Court
T.C. Memo 1985-350; 1985 Tax Ct. Memo LEXIS 283; 50 T.C.M. (CCH) 438; T.C.M. (RIA) 85350; July 16, 1985. *283 R issued a notice of deficiency to Ps based upon information obtained from grant jury proceedings pursuant to Federal District Court order under Rule 6(e), Fed. R. Crim. P. Both Ps lived outside the U.S. when petition was filed. P-W subsequently returned, but P-H remains fugitive from justice.Ps moved to quash statutory notice, set aside erroneous assessment and enter judgment for Ps, and to suppress, shift burden of going forward and to strike, all based upon retroactive application of principles in United States v. Baggot,463 U.S. 476 (1983), and United States v. Sells Engineering, Inc.,463 U.S. 418 (1983). Held, despite R's request, the Court will entertain Ps' motions although P-H is fugitive from justice. P-W, who will be bound by decision, is present and willing to proceed, and both Ps are represented by counsel. Held further, Ps' motions denied. Kluger v. Commissioner,83 T.C. 309 (1984), followed. *284 Michael C. Durney and Richard M. Roberts, for the petitioners. Barry Furman, for the respondent. CANTREL
MEMORANDUM OPINION CANTREL, Special Trial Judge: This case is before the Court on petitioners' Motions to Quash Statutory Notice of Deficiency, Set Aside Erroneous Assessment and Enter Judgment for Petitioners and To Suppress, Shift Burden of Going Forward, and Strike, both filed on August 18, 1983. [1] The case was called for hearing at Washington, D.C. on September 29, 1983, at which time counsel for the parties appeared and presented argument. Respondent issued a notice of deficiency on September 29, 1980, in which he determined a deficiency of $1,616,306 for the calendar year 1977 and an addition to tax for fraud under section 6653(b) in the amount of $808,153. The amount of the deficiency represented *285 tax on the unreported income from a contract Francis E. Terpil (hereinafter referred to as "Terpil" or "petitioner") executed in 1977 to provide explosive materials and devices to the Uganda Government. [2]
Petitioners timely filed a petition in this Court on December 24, 1980. At the time of filing, both petitioners were outside the United States. *286 Terpil was a fugitive from justice, having been convicted in the State of New York on charges stemming from his arms sales to terrorists. Mrs. Terpil, who at some time not clear in the record had been charged with United States customs and/or passport violations, subsequently returned to the United States. [3]
This case arises ultimately from Terpil's illegal arms transactions. Formerly an operative in the Central Intelligence Agency (CIA), Terpil later supplied arms, explosives and electronic surveillence equipment, among other things, to various terrorists groups and to the governments of Uganda and Libya. As the result of certain of his arms transactions, Terpil was arrested on December 22, 1979, in New York and charged with committing New York State arms offenses. Terpil was released on bond. He was arrested again in Washington, D.C., in April *287 1980 after a Federal grand jury returned an indictment charging him with conspiracy to violate federal explosive laws, conspiracy and solicitation to murder and acting as an agent of Libya without notifying the United States Department of State. Again released on bail, Terpil fled the country in September 1980, and he remains a fugitive from justice. He was tried in absentia on the New York State charges, convicted and sentenced to more than 50 years in prison. The federal indictments are still pending against him. In an ex parte motion filed on July 22, 1980, the Internal Revenue Service requested disclosure of grand jury materials related to the indictment against Terpil. On the same day the United States District Court for the District of Columbia issued an order pursuant to Rule 6(e), Federal Rules of Criminal Procedure (hereinafter the Rule 6(e) order) authorizing disclosure of: * * * materials previously disclosed to special agents of Internal Revenue Service pursuant to prior disclosure authorization as well as other relevant materials gathered during the course of the criminal investigation * * * for use in an official tax investigation, *288 whether civil or criminal in nature. Pursuant to the Rule 6(e) order, respondent obtained a copy of the August 3, 1977 contract between Terpil as Director of Intercontinental Technology, S.A., and the Uganda Government, as well as most of the other documentary evidence respondent used to determine the deficiency and to make the jeopardy assessment. Respondent then made a jeopardy assessment on August 27, 1980, and issued the notice of deficiency on September 29, 1980. Petitioners maintain that respondent elicited the grand jury materials in violation of the requirements of Rule 6(e), Fed. R. Crim. P., as set forth in United States v. Baggot,463 U.S. 476 (1983), affg. In Re Special February, 1975 Grand Jury (Baggot),662 F.2d 1232 (7th Cir. 1981), and United States v. Sells Engineering, Inc.,463 U.S. 418 (1983). They argue that Baggot, decided after the Rule 6(e) order involved in this case was issued, should apply to these proceedings because the trial had not begun as of the date of the Baggot decision. Because the receipt of the grand jury materials constituted an abuse of *289 the grand jury process, petitioners contend that these materials should be suppressed. If the materials are suppressed, then the notice of deficiency, which petitioners claim is based solely on information contained in those materials, must be without foundation. Petitioners conclude that the notice must be quashed or should not be entitled to the presumption of correctness that generally attaches to statutory notices so that the burden of going forward shifts to respondent here. Respondent counters that Baggot should be applied prospectively only to Rule 6(e) orders issued after the Baggot decision. Alternatively, even if Baggot were to be applied retroactively, respondent claims that the notice of deficiency would nevertheless be valid because the Court will not look behind a deficiency notice. Nor should possible retroactive application of Baggot result either in suppression of the materials obtained through the Rule 6(e) order or in shifting the burden of going forward onto respondent. Citing Braverman v. Commissioner, Docket Nos. 2880-75, 4612-75 and 5236-76 (Memorandum Sur Order, July 27, 1982), and Estate of Temple v. Commissioner,65 T.C. 776 (1976), *290 respondent argues that petitioner cannot collaterally attack the Rule 6(e) order here because this Court should not sit in review of the discretionary action of a United States District Court. [4]
*291 Finally, respondent asks the Court to refrain from entertaining the Terpils' motions as long as Frank Terpil is a fugitive from justice. Petitioners argue with respect to this request that Mrs. Terpil is not a fugitive from justice but available and willing to assist in the prosecution of this case. Petitioners also submit that no connection exists between the criminal matters on account of which Terpil jumped bail and the deficiency in Federal income taxes for 1977 now before this Court. The New York and federal indictments and the New York conviction and 53-year sentence occurred after 1977. We turn first to respondent's request that we refrain from entertaining petitioners' motions because Terpil is a fugitive from justice. Consideration has previously been given to situations where the taxpayer was a fugitive from justice. See Conforte v. Commissioner,692 F.2d 587 (9th Cir. 1982), affg. in part and revg. in part 74 T.C. 1160 (1980); Dante v. Commissioner,T.C. Memo. 1978-126; J. & C.A. Corp. v. Commissioner,T.C. Memo. 1965-280; Gilmore v. Commissioner,T.C. Memo. 1957-85. In neither *292 J. & C.A. Corp. nor Gilmore, both of which were also civil fraud cases, did the Court address the specific question whether it should dismiss the case because taxpayers were fugitives from justice. In Gilmore the taxpayer-husband was a fugitive from justice, and neither he nor his wife entered an appearance at trial. Nevertheless, the Court dealt with the case on its merits and found for respondent. Moreover, the Court considered (but dismissed) the taxpayers' allegations made in a memorandum received after the trial. In J. & C.A. Corp. the individual taxpayers who were part of the case were fugitives from justice. As in Gilmore, no appearances were made for them or on behalf of the corporation at trial. The Court, therefore, granted respondent's motions to dismiss for lack of prosecution and, based on facts deemed admitted, approved the amount of taxes and additions to tax determined by respondent. In Vesco v. Commissioner,T.C. Memo. 1979-369 (48 P-H Memo T.C. par. 79,369, 39 T.C.M. 101 (1979)), this Court dealt with an issue similar to that before us now. At the time the petition was filed, the taxpayer Robert Vesco lived *293 in Costa Rica and the Bahamas. He was indicted on various federal securities fraud charges. Although we questioned whether the taxpayer was in fact a fugitive from justice, we concluded that, even if Vesco was a fugitive, we, in exercising our discretion, would not determine the deficiency as set forth in the notice of deficiency "without considering the voluminous evidence introduced at the trial": [5] the deficiencies in that situation were determined against Robert Vesco and his wife; to determine Mrs. Vesco's case required a determination of the income tax liability of Mr. Vesco; and Mrs. Vesco, who filed a separate petition, would be bound, through an agreement, as to any determination made in her husband's case. Moreover, Mrs. Vesco was not a fugitive from justice and had not been involved in any criminal action. Accordingly, this Court would not use its discretionary power to decide the case against Robert Vesco on the basis of the statutory notice. Nor in the case presently before us will we deny petitioner-husband *294 access to this Court. The basis for denying a fugitive his day in court is within our discretionary power, as Vesco v. Commissioner,supra, suggests, and we decline to deny Terpil a hearing for many of the same reasons cited in Vesco. As in Vesco, we have before us a petitioner-wife bound by any determinations made against her husband, and at the same time claiming that she is an innocent spouse under section 6013(e). Mrs. Terpil, herself outside the United States for part of these proceedings, is now able and willing to go forward in this case. An even more persuasive element for rejecting respondent's position is that, unlike in Vesco, only one petition was filed, so that both husband and wife are part of the same case. Thus, Mrs. Terpil may do whatever is necessary to prepare the entire case. Further, both she and her husband are fully represented by counsel. We are not persuaded by respondent's reliance on Molinaro v. New Jersey,396 U.S. 365, 366 (1970) and Conforte v. Commissioner,692 F.2d 587 (9th Cir. 1982). In Molinaro, the Court dismissed a criminal defendant's appeal of his conviction, not *295 on the ground that his escape from custody stripped the matter of its character as an adjudicable case or controversy, but because his escape "* * * disentitles the defendant to call upon the resources of the Court for determination of his claims." Molinaro v. New Jersey,supra at 366. Likewise, in Conforte v. Commissioner,692 F.2d at 587, the Court dismissed the husband's appeal from a Tax Court decision determining taxes and fraud additions against him and Mrs. Conforte because he was a fugitive from justice. To dismiss the fugitive-husband's case in Conforte, the Court relied on Molinaro and on its own case, Johnson v. Laird,432 F.2d 77, 79 (9th Cir. 1970), in which the Court stated that any court in its "inherent discretion" may refuse to hear a claim of a litigant who indicates he will comply with the court's decree only if it is favorable. Neither of these cases is sufficiently, factually similar to the situation we have before us for us to rely on either in making our determination. Exercising our discretion under the circumstances before us, therefore, we will entertain petitioners' motions. Insofar *296 as the substance of the present motions are concerned, their outcome is governed by Kluger v. Commissioner,83 T.C. 309 (1984), Court reviewed, in which this Court addressed the arguments put forth by petitioners and respondent. See also Dugan v. Commissioner,T.C. Memo. 1985-38. The Court held in Kluger that, although the Rule 6(e) order was issued in violation of the standards later set out in Baggot and SellsEngineering, those standards are not to be applied retroactively to Rule 6(e) orders issued prior to the dates of those cases. The Court also held in Kluger that we have jurisdiction to consider the validity of a Rule 6(e) order issued by a District Court insofar as it affects rulings on evidence and procedure in cases before this Court. Accordingly, we must and do deny petitioners' motions to quash the notice of deficiency, set aside erroneous assessment and enter judgment for petitioners, and to suppress, shift burden of going forward and strike. See also Graham v. Commissioner,82 T.C. 299, 310 (1984), Court reviewed (assuming illegality of respondent's use of grand jury materials, such use does *297 not render statutory notice void). An appropriate order will be issued.
Footnotes
1. This case was assigned pursuant to Delegation Order No. 8 of this Court, 81 T.C. XXV (1983).↩
2. Terpil received some notoriety from his activities and as the subject of a show originally aired January 11, 1982 on public television, "Frank Terpil: Confessions of a Dangerous Man." According to Daniel Schorr, narrator of the program, Terpil contacted public television from Beirut after his New York conviction so that he could tell his side of the case. On that show, the New York City police who arrested Terpil also described their investigations into Terpil's activities. Terpil admitted to selling sundry "equipment" to Idi Amin, former ruler or Uganda, and in fact to having an office in a building where torture was carried out next door to Idi Amin's residence. On this program also, a copy of the contract dated August 3, 1977 between Terpil and the Uganda Government was displayed and referred to in discussions with Terpil.↩
3. The record is unclear both as to the nature and seriousness of any charges against Mrs. Terpil and the time frame in which they occurred. At any rate, her counsel advised the Court in briefing these motions and at oral argument that Mrs. Terpil has returned to the United States and is willing and able to prosecute this case.↩
4. We will not address respondent's argument that petitioners here cannot collaterally attack the Rule 6(e) order, because he obtained the grand jury materials to aid in making a jeopardy assessment. Respondent claims that disclosure under these circumstances may be "preliminar[y] to * * * a judicial proceeding." Rule 6(e)(3)(C)(i), Fed. R. Crim. P. While our holding today obviates discussing this issue, we note that the Supreme Court in United States v. Baggot,463 U.S. 476, 480 (1983), stated: "[D]isclosure is not appropriate for use in an IRS audit of civil tax liability, because the purpose of the audit is not to prepare for or conduct litigation but to assess the amount of tax liability through administrative channels." The fact that disclosure was sought as part of a civil tax proceeding in which respondent planned to make a jeopardy assessment does not take its facts outside Kluger v. Commissioner,83 T.C. 309 (1984), or Baggot.↩ Jeopardy assessment is a civil, administrative proceeding and no more "preliminar[y] to a judicial proceeding" than any other investigation to assess and collect taxes.
5. Vesco v. Commissioner,T.C. Memo. 1979-369 (48 P-H Memo T.C. par. 79,369 at 79-1433, 39 T.C.M. 101↩ at 126 (1979)).