Danny FELIX, Appellant,

v.

Bernard L. BRAXTON, Appellee.

No. 94–SP–385.

District of Columbia Court of Appeals.

Argued Oct. 19, 1995.

Decided Nov. 30, 1995.

Thomas F. Urban II, with whom Pamela Beth Small, Washington, DC, was on the brief, for appellant.

Mary L. Wilson, Assistant Corporation Counsel, with whom Erias Hyman, Acting Corporation Counsel at the time the brief was filed, and Charles L. Reischel, Deputy Corporation Counsel, were on the brief for appellee.

Before FERREN, SCHWELB, and REID Associate Judges.

PER CURIAM:

Danny Felix, a resident of the Lorton Correctional Facility, was found guilty in a prison disciplinary proceeding of escape, lack of cooperation, and being out of place. Felix had a prison status that authorized him to leave Lorton during the day to perform a clerk/typist job at a D.C. government halfway house. However, he allegedly disobeyed instructions not to appear for work on July 2, 1993, a furlough day, and, after taking the prison bus into town, allegedly spent the day at large in the District of Columbia. Felix appeals the denial of his petition for a writ of habeas corpus, in which he claimed that Ber-nard Braxton, Administrator of the Occoquan Facility, and other prison officials, in conducting the disciplinary proceeding, had violated his right to constitutional due process, as well as his rights under prison regulations, 28 DCMR §§ 500 et. seq. (1987).

Counsel argued Felix's case in this court on October 19, 1995, but on October 23, 1995, before we had reached a decision, the District moved to dismiss Felix's appeal upon learning that Felix had absconded from the halfway house where he was incarcerated on August 27, 1995, and was still at large. As Felix's counsel notes, there is no evidence to demonstrate that Felix willfully left or failed to return to the halfway house, rather than failing to return to the halfway house for a plethora of other possible reasons. Neither counsel disputes, however, that Felix is presently absent from incarceration without authorization. We therefore grant the District's motion to dismiss.

"[T]he court has discretionary power to dismiss an appeal where an appellant absconds during its pendency." *West v. United States,* 604 A.2d 422, 425 (D.C.1992). "The reasons justifying refusal of the appeal include: (1) inappropriateness of appellate review for one who displays such disdain for the judicial system; (2) discouragement of escape; (3) deterrence of interference with the efficient operation of the court; and (4) avoidance of unfair prejudice to the government by delay occasioned by appellant's flight." *Id.* at 425; *In re S.H.,* 570 A.2d 814, 816 (D.C.1990). Although these quoted decisions addressed the propriety of dismissing appeals of the appellants' underlying convictions, the same considerations justify dismissing the appeal of a civil matter related to Felix's conviction. *See Doyle v. United States,* 215 U.S.App.D.C. 333, 333, 668 F.2d 1365, 1365 (1982) (Freedom of Information Act request for Department of Justice records concerning appellant dismissed once he became a fugitive from justice); *Conforte v. Commissioner of Internal Revenue,* 692 F.2d 587, 589–90 (9th Cir.1982) (taxpayer's civil tax appeal dismissed when he became a fugitive from justice in criminal tax case); *United States ex rel. Bailey v. United States Commanding Officer of the Office of Provost*

*Marshal,* 496 F.2d 324, 326 (1st Cir.1974) (habeas corpus petition challenging Army regulation dismissed when appellant was absent from Army without authorization); *Johnson v. Laird,* 432 F.2d 77, 79 (9th Cir. 1970) (habeas corpus petition seeking release from the Army as conscientious objector dismissed when appellant voluntarily absented himself from the military and was still at large). Although Felix did not, and could not, seek release from incarceration in the civil case before us, his constitutional and statutory challenges to prison disciplinary proceedings were intimately connected with his incarceration and thus bring dismissal of this related civil action within the court's discretion.

 Felix's counsel urges that the District has waived its right to move for dismissal by waiting until after the merits of the case were briefed and argued to inform the court of Felix's alleged escape. While we encourage counsel to inform the court of an appellant's absence as soon as counsel learns of it so that the court may consider whether to dismiss the case before investing judicial resources addressing the merits of the case, the fact that Felix's abscondence was brought to the court's attention after oral argument does not preclude the District from moving to dismiss. Given the facts here, we believe it appropriate to dismiss Felix's appeal. Although convicted defendants do not forfeit their constitutional or statutory rights upon entering a correctional facility, *see Wolff v. McDonnell,* 418 U.S. 539, 555, 94 S.Ct. 2963, 2974, 41 L.Ed.2d 935 (1974), Felix's unauthorized and untimely exit from incarceration has disentitled him from calling upon the resources of the court for determination of claims related to his incarceration.

*See Molinaro v. New Jersey,* 396 U.S. 365, 366, 90 S.Ct. 498, 499, 24 L.Ed.2d 586 (1970) (per curiam). Accordingly, the appeal is ordered dismissed.

SCHWELB, Associate Judge, concurring:

Felix failed to return to his halfway house on August 27, 1995. When this case was argued on October 19, 1995, Felix had been at large for seven and a half weeks. Neither his own attorneys nor the Office of Corporation Counsel, which represents Braxton, apprised the court of this development. Apparently, they did not know.

On Monday, October 23, 1995, the second working day after argument, counsel for Braxton filed a motion to dismiss the appeal on the grounds that Felix had "escaped." [1] By that time, the members of the court had studied the voluminous record and briefs, including supplemental memoranda written after the abscondence. We had also heard an hour of oral argument, conferred on the case, and begun work on an opinion. Many hours of judicial time had thus been devoted to the case of a man who had evidently decided, before much of the work was done, that he would not stay around for the outcome.

The attorneys for Felix now ask the court not to dismiss the appeal. They claim that Braxton has waived the right to seek dismissal by not filing the motion earlier. I agree with my colleagues that, in light of the prisoner's abscondence, we should cut our losses and decline to proceed with the merits of the appeal. I therefore join the opinion of the court.

I write separately, however, because Braxton's tardiness in filing his motion has creat-

---

**1.** Ironically, the disciplinary action which precipitated this case was also for "escape." Specifically, Felix was charged with this offense after he allegedly disobeyed instructions not to take the prison bus to work on a furlough day. The "escape" charge was based on his failure to be where he was supposed to be. Felix claims that he stood outside a halfway house, waiting for another bus to take him the rest of the way to his job, and spending his time "holler[ing] at the girls." There is apparently no dispute that Felix returned to Lorton at the end of the furlough day.

The very real (and as yet apparently continuing) 1995 escape which precipitated the motion to dismiss this appeal has now defeated Felix' right to a decision on the merits of what I view as a very short-lived "escape" in 1993. If words are taken to mean what they say in plain English, I think "escapade" would be a more accurate term than "escape." I note that in the not so very understated lingo of the law of corrections, a defendant who walks away from a halfway house is charged with, of all things, "prison breach." *See* D.C.Code § 22–2601 (1989); *United States v. Venable,* 316 A.2d 857, 858 (D.C. 1974) (per curiam).

ed a troubling scenario. If a litigant can secure dismissal of an appeal after a case has been argued, on grounds which existed long before argument, an incentive is created to base the decision whether or not to file a motion to dismiss, or how speedily to file it,[2] on an appraisal of the prospects for victory on the merits. Here, Felix served his punitive "adjustment" segregation in July 1993, more than two years ago. His days in a "control cell" cannot now be undone. The primary potential significance of the case therefore relates to the precedent it might set. The specter of the possible "tactical" use of information about an escape looms large in such a scenario.

I do not suggest that tactical considerations played a role in this case. Counsel for Braxton represented in her motion that she brought the facts about Felix to our attention as soon as she learned of them. I have not the slightest hesitation in relying on counsel's representation. Nevertheless, to avoid the kind of situation which has arisen here, and to protect judicial and other resources, attorneys for prisoners who are parties to this type of litigation, as well as correctional authorities and their counsel, have an obligation to keep fully abreast of the prisoners' status, and they must apprise the court immediately of any relevant developments.

---

2. I presume that an attorney who learns of an abscondence would find it appropriate to bring the information to the attention of the court. Candor with the court requires no less. Nevertheless, the incentive to look into the facts and to find out whether there has been a change in the prisoner's circumstances becomes increasingly acute if a litigant appears to be facing an unfavorable and precedent-setting decision on the merits.