DEXTER L. MINTER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; DEXTER L. and ELEANOR MINTER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Minter v. Commissioner
Docket Nos. 14033-88, 14054-88
United States Tax Court
T.C. Memo 1991-448; 1991 Tax Ct. Memo LEXIS 497; 62 T.C.M. (CCH) 712; T.C.M. (RIA) 91448; September 16, 1991, Filed *497 Decisions will be entered under Rule 155. Dexter L. Minter and Eleanor Minter, pro se. Sherri L. Munnerlynn and H. Lloyd Nearing, for the respondent. PARR, Judge. PARR
MEMORANDUM OPINION Respondent determined deficiencies in and additions to petitioners' individual Federal income tax as follows: Dexter L. Minter Docket No. 14033-88 Tax Year
Additions to Tax
Ended
Deficiency
Sec. 6661 [1]
Sec. 6653(b)(1)
Sec. 6653(b)(2)
December 31, 1983
$ 54,628
$ 13,657
$ 27,314
*
Dexter L. and Eleanor Minter Docket No. 14054-88 Tax Year
Additions to Tax
Ended
Deficiency
Sec. 6661
Sec. 6653(b)(1)
Sec. 6653(b)(2)
December 31, 1984
25,846
6,462
12,923
*
December 31, 1985
34,901
8,725
17,451
*
*498 The issues for decision are: (1) Whether Dexter Minter (petitioner) received unreported taxable income in 1983 and 1985, and if so, in what amounts; (2) whether petitioner engaged in an accounting, tax return preparation, and notary service business during the years 1983 through 1985, and if so, whether he paid deductible expenses during this period and the amount thereof; (3) whether Eleanor Minter (copetitioner) engaged in a computer-consulting business during 1985, and if so, whether she paid deductible business expenses and the amount thereof; (4) whether petitioner paid deductible expenses for his rental properties during the years 1983 through 1985 and the amount thereof; (5) whether petitioner paid contributions to his individual retirement account (IRA) before the final date for such payments for 1983 and 1985; (6) whether petitioner sustained deductible partnership losses in the years 1983 through 1985 from his interest in *499 a real estate partnership; (7) whether petitioner is entitled to various itemized deductions for the years 1983 through 1985; (8) whether petitioners are liable for the additions to tax for fraud under section 6653(b); (9) whether petitioners are liable for additions to tax pursuant to section 6661 due to a substantial understatement of income tax liability; and (10) whether petitioners are liable for additions to tax pursuant to section 6653(a), for negligence or intentional disregard of rules and regulations with respect to income taxes, in lieu of the additions to tax for fraud determined under section 6653(b). For clarity, findings of facts and opinion will be combined issue by issue. Some of the facts have been stipulated and are found accordingly. The stipulation of facts, together with attached exhibits, are incorporated herein. Petitioners resided in Los Angeles, California, when they filed their petitions in this case. A. Background
Petitioners were married in 1984. Mr. Minter filed a Federal income tax return for 1983, in which he reported the filing status of "single." He reported adjusted gross income of $ -0- after deducting losses from operation of his accounting, *500 tax return preparation, and notary service business; from the rental real estate he owned individually; and from a pass-through loss from a real estate partnership in which he owned a 50-percent interest. Petitioner filed an application for an automatic extension of time to file his 1983 Federal tax return to August 15, 1984. Nevertheless, he did not file the tax return until March 15, 1985. Petitioners filed Federal income tax returns for 1984 and 1985 in which they reported the filing status of "married, filing joint return." They reported adjusted gross income of $ -0- and $ 14,068, respectively, after deducting losses from operation of petitioner's accounting, tax return preparation, and notary service business; from the rental real estate he owned individually; and from a pass-through loss from a real estate partnership in which he owned a 50-percent interest. In addition, petitioners deducted a loss incurred by copetitioner in 1985 due to the operation of a computer consulting business. Petitioners filed their 1984 income tax return on April 14, 1985. Their 1985 tax return was not filed until August 15, 1986; they did not file an application for an extension of time to *501 file their 1985 tax return. Petitioner earned a bachelor's and a master's degree in business. He was employed by the county of Los Angeles during all periods relevant to this proceeding as head of the Fiscal Budget Services Department. In this capacity, he prepared annual budgets for the county, and supervised an accounting staff. He also attended continuing education classes during various periods. Copetitioner was employed by the county of Los Angeles as a data processing manager. B. Gross Income
Respondent determined that petitioner failed to report gross income for the years 1983 and 1985 of $ 15,747 and $ 992, respectively. These amounts of unreported income were determined under the bank deposits method of income reconstruction. Respondent made substantial concessions after petitioners presented evidence of previously unidentified transfers. 1. 1983
Petitioner deposited $ 81,224 into his bank accounts during 1983, not including interaccount transfers of $ 45,378. He reported gross income from the following sources: a. Wages - Petitioner's gross wages for 1983 totaled $ 37,478. The taxes withheld from petitioner's wages totaled $ 5,809. Therefore, *502 petitioner's net wages for 1983 were $ 31,669. b. Interest Income - Petitioner reported interest income of $ 9,350. c. Accounting Income - Petitioner reported gross income from his accounting, tax return preparation, and notary services business of $ 9,950. d. Rental Income - Petitioner reported gross rental income of $ 8,700. Additionally, petitioner deposited proceeds from the following sources, some of which are nontaxable: a. Federal income tax refund for 1981, deposited on February 15, 1983, in the amount of $ 4,070. (Petitioner received $ 156 of interest on this tax refund. The interest constitutes unreported taxable income.) Further, petitioner received a refund of his 1981 State income tax in 1983. However, since he was unable to prove that he did not itemize his deductions on his 1981 Federal tax return, we cannot find that this State tax refund is nontaxable. b. Proceeds of loan from Mr. Edward Law in the amount of $ 8,500. Respondent contests the receipt and deposit of the proceeds from this loan. The copy of the check from Mr. Law to petitioner, and the bank statement, clearly reflect that it was deposited into petitioner's account at Public *503 Services Federal Credit Union, No. S-543829, on April 22, 1983. 2. 1985
Petitioners deposited $ 108,274 into their bank accounts during 1985, not including inter-account transfers of $ 22,430. Petitioners and respondent stipulated to inter-account transfers of $ 20,288 for 1985. In accord with the evidence, we accept the larger amount. [2] Petitioners reported gross income from the following sources in 1985: a. Wages - Petitioners' gross wages for 1985 totaled $ 68,176. The taxes withheld from petitioners' wages totaled $ 13,408. Therefore, petitioners' net wages for 1985 were $ 54,768. b. Interest Income - Petitioners reported interest income of $ 10,680. Petitioners also received $ 544 as interest income not reported on their 1985 Federal tax return. c. *504 Dividend Income - Petitioners reported dividend income of $ 158. d. Accounting and Computer-Consulting Business Income - Petitioner reported gross income of $ 5,500 from his accounting, tax return preparation, and notary services business; copetitioner reported gross income of $ 1,250 from the operation of her computer-consulting business. e. Rental Income - Petitioners reported gross rental income of $ 9,410. In addition, petitioners received a condemnation award of $ 1,300 from the California Department of Transportation (Caltrans), for an easement on their rental property at 12030 S. Figueroa Street, Los Angeles, California. This was not reported as gross income on petitioners' tax return for 1985, nor was their adjusted basis for that part of the property that was condemned claimed as an offset to determine gain. Additionally, petitioners deposited proceeds from the following nontaxable sources: a. Federal income tax refunds for 1983 and 1984, deposited on August 16, 1985, and September 19, 1985, respectively, in the amounts of $ 4,672 and $ 9,576, respectively. b. State income tax refunds for 1983 and 1984, deposited on August 16, 1985, and September 19, *505 1985, respectively, in the amounts of $ 1,137 and $ 2,506, respectively. As petitioners derived no benefit from the deduction for State income taxes on their 1983 and 1984 Federal tax returns, the refunds do not constitute taxable income for 1985. c. Loan proceeds in the amount of $ 5,000. Petitioners asserted that they deposited the proceeds of a loan from Mr. Michael Clayvon, in the amount of $ 6,000, into account number 564800481-01 at Public Services Federal Credit Union, on August 16, 1985. The deposit on this date included the 1983 Federal and State tax refunds noted above, and a deposit of $ 5,000. Because petitioners did not establish the account to which the additional $ 1,000 of the loan was deposited, and because, as petitioner testified, Mr. Clayvon "deals in cash," we find that only $ 5,000 of the loan was deposited by petitioners and should therefore be subtracted in determining their gross income for 1985. Every taxpayer is required to maintain records sufficient to enable him or her to determine taxable income. Sec. 6001. If the method used does not clearly reflect income, respondent may recompute such income. Sec. 446(b); Holland v. United States, 348 U.S. 121, 130-132, 99 L. Ed. 150, 75 S. Ct. 127 (1954). *506 Use of the bank deposit method for computing income has long been sanctioned by the courts. Estate of Mason v. Commissioner, 566 F.2d 2 (6th Cir. 1977), affg. 64 T.C. 651, 656 (1975); Halle v. Commissioner, 175 F.2d 500 (2d Cir. 1949), affg. 7 T.C. 245 (1946). Though not conclusive, bank deposits are prima facie evidence of income. Boyett v. Commissioner, 204 F.2d 205 (5th Cir. 1953), affg. a Memorandum Opinion of this Court; Hague Estate v. Commissioner, 132 F.2d 775 (2d Cir. 1943), affg. 45 B.T.A. 104 (1941); Tokarski v. Commissioner, 87 T.C. 74, 77 (1986); Estate of Mason v. Commissioner, 64 T.C. 651 at 656. Petitioners admittedly did not maintain a formal set of books and records, but instead opted to use file folders to capture the information needed to determine their taxable income. These file folders included many items which petitioner, as an accountant who prepared income tax returns for others, knew not to be deductible in determining taxable income. Petitioner testified that he used bank statements in *507 the place of a cash receipts journal, and was able to identify supposed nonincome items from memory. He vaguely referred to cards on which he maintained records of rental income received from each tenant, but did not produce them. Therefore, we find petitioners' records to be wholly inadequate in determining taxable income. Respondent's use of the bank deposit method to reconstruct petitioners' gross income is appropriate. Once respondent has determined a deficiency based on the bank deposit method, his conclusions are presumed to be correct, and petitioner has the burden to show that various deposits do not constitute income. United States v. Helina, 549 F.2d 713, 715 (9th Cir. 1977); Rule 142(a). Further, respondent need not prove a likely source of the unreported income when his determinations are presumptively correct. Armes v. Commissioner, 448 F.2d 972 (5th Cir. 1971), revg. on other issues a Memorandum Opinion of this Court. Petitioner partially relied on his own testimony to prove the source of several deposits to be nontaxable. We are not bound to accept petitioner's testimony, especially when his testimony is improbable, unreasonable, *508 or questionable. Lovell and Hart, Inc. v. Commissioner, 456 F.2d 145, 148 (6th Cir. 1972), affg. per curiam a Memorandum Opinion of this Court; Banks v. Commissioner, 322 F.2d 530, 537 (8th Cir. 1963), affg. a Memorandum Opinion of this Court; Tokarski v. Commissioner, 87 T.C. at 77; Pascarelli v. Commissioner, 55 T.C. 1082, 1095 (1971), affd. without published opinion 485 F.2d 681 (3d Cir. 1973). Petitioner's testimony regarding income from his rental units is credible. The eviction proceedings that petitioner documented roughly correspond to the unpaid rent which would have been collected in the years in issue. However, petitioner's testimony regarding other sources of his gross income is not credible. We find the source to be his accounting business. We doubt that an accountant, who not only provides financial advice to his clients, but who is also employed by the county of Los Angeles as head of a department that prepares annual budgets, would remain in a business that incurred consistent losses as reported by petitioner. Therefore, we find petitioners' gross income for 1983 *509 and 1985 to be understated by $ 8,985 and $ 992, respectively. See appendix A for our computation for 1983. [3]
The sources of petitioner's unreported income for 1983 are: (1) Interest income (earned on refund of 1981 Federal income taxes) -- $ 156; and (2) operation of his accounting, tax return preparation, and notary services business -- $ 8,829. The sources of petitioners' unreported income for 1985 are: (1) Condemnation award from Caltrans -- $ 1,300; (2) interest income -- $ 544; and (3) petitioner's accounting, tax return preparation, and notary service business -- $ 1,773. C. Accounting Business Expenses -- Petitioner
Petitioner has been engaged in the accounting, tax return preparation, and notary services business for almost 20 years. This business was operated as a sideline to his main source of income, *510 his position with the county of Los Angeles. In his tax returns for 1983 through 1985, petitioner claimed losses of $ 7,504, $ 7,498, and $ 4,805, respectively, after deducting expenses for those years of $ 17,454, $ 14,028, and $ 10,305, respectively. Respondent disallowed all but a small portion of the claimed deductions. Respondent argues that petitioner was not engaged in an accounting, tax return preparation, and notary service business during the years at issue, apparently on the theory that petitioner did not have a profit objective. It is noted that an accounting, tax return preparation, or notary service activity is not the sort from which one normally derives personal pleasure or recreation. Petitioner is well trained to carry on this activity, and expended great amounts of time in the process. We find that he was engaged in his accounting, tax return preparation, and notary service business for a profit. At trial, petitioner presented evidence in attempts to corroborate his deductions. However, the amount he was able to prove fell far short of the amount he deducted on his tax returns. Several of the receipts were illegible. For example, photocopies of receipts *511 supposedly for parking fees were either blank or too dark to read. Other receipts were for items purchased by "Marvin Minter," or "Marv," who is petitioner's father, or "Tax Methods Company," a fictitious name registered by petitioner's father. Payments for telephone service were admittedly for service at petitioner's home. Several of the deductions were for clearly personal items, such as dry cleaning, groceries, infant wear, toys at Christmas time, or a subscription to "Road and Track" magazine. Such personal items are not deductible. Sec. 262. Of the items that were clearly related to accounting activity, petitioner's evidence fell short of the amount deducted. While we may estimate the amount of allowable deductions where there is evidence that deductible expenses were incurred, Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930), some basis must exist on which this estimate can be made. Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985). We find that petitioner is entitled to deductions attributable to his accounting, tax return preparation, and notary services business for 1983 through 1985 in the amounts of $ 1,122, *512 $ 670, and $ 892, respectively. See appendices B, C, and D for our computations. D. Computer Consulting Expenses -- Copetitioner
Copetitioner registered a fictitious name for her computer consulting business on October 23, 1985. Petitioner testified that copetitioner engaged in this activity on an intermittent basis until that date. Respondent has impliedly conceded that copetitioner was engaged in this business for a profit, as he did not raise the issue at trial or in his brief. For 1985 petitioners deducted a loss of $ 3,965 from copetitioner's business after claiming expenses of $ 5,215. Respondent disallowed all of the expenses; petitioners and respondent did not stipulate to any of the expenses. Based on our analysis, we find that copetitioner is entitled to deduct $ 1,466 of expenses for her computer-consulting business. See appendix E for our computations. E. Rental Property Expenses
Petitioner has owned rental real estate since 1976. During all periods relevant to this case, he owned the properties at 12030-36 South Figueroa St., Los Angeles, California (Property 1), 441 West 121st Street, Los Angeles, California (Property 2), and 1626 Pennsylvania Avenue, *513 Los Angeles, California (Property 3). In 1984 petitioners purchased a duplex at 1080-82 South Sycamore Avenue, Los Angeles, California (Property 4). They lived in one-half of the property, and rented the other half to a tenant. Petitioners claimed losses from these properties in 1983 through 1985 of $ 35,175, $ 55,409, and $ 47,518, respectively, after deducting expenses of $ 43,875, $ 67,059, and $ 56,928, respectively. Petitioners and respondent have stipulated to expenses for the years in issue of $ 26,962, $ 37,895, and $ 28,422, respectively. [4]
As with their respective accounting activity and computer-consulting expenses, petitioners were unable to corroborate all *514 of the expenses on which they and respondent could not agree. Several receipts were illegible. Others lacked sufficient explanation to be credible. For example, petitioner presented a check payable to "Gary Toone." No explanation was offered as to the reason Mr. Toone was paid. A receipt from Photomat was entered into evidence; petitioner's explanation was that he needed a photograph for an appraisal of one of his properties. However, he did not present a copy of the appraisal, or a proof of payment made to the appraiser. Based on our analysis, we find that petitioners overstated their rental expenses for each year in issue. They are entitled to rental property expenses for 1983 through 1985 of $ 26,962, $ 38,483 and $ 36,272, respectively. See appendix F for our computations. F. Individual Retirement Account Deduction
Petitioner claimed a $ 2,000 deduction each year at issue for a contribution to an IRA. Respondent denied the deductions for 1983 and 1985. 1. 1983
In 1983 petitioner contributed $ 2,000 to his IRA for 1982. He made no other contributions in 1983. On July 2, 1984, petitioner contributed $ 2,000 to his IRA, and deemed this to be his 1983 contribution. *515 Respondent has denied the deduction, since it was not paid on or before April 15, 1984. Petitioner made no other contributions to his IRA in 1984. Respondent denied the deduction based on his reading of section 219(f)(3)(A), as now in effect, which requires that IRA contributions be made on or before the due date of the tax return, not including extensions thereof. However, this was not the law that governed petitioner's 1983 contribution. Section 219(f)(3)(A), as in effect for 1983, allowed taxpayers to make an IRA contribution up until the extended due date for the tax return. Economic Recovery Tax Act of 1981, Pub. L. 97-34, sec. 311(a), 95 Stat. 274. For contributions made after December 31, 1984, the Deficit Reduction Act of 1984 required taxpayers to make their contributions on or before the unextended due date of the tax return, or April 15 in the case of a calendar year taxpayer. Pub. L. 98-369, sec. 147, 98 Stat. 687. On April 16, 1984, petitioner filed Form 4868, applying for an extension of the due date of his 1983 Federal tax return. (April 15, 1984, was a Sunday, so the due date for calendar year taxpayers to file their 1983 tax returns was April 16, *516 1984.) Sec. 7503; sec. 301.7503-1(a), Proced. & Admin. Regs. On the extension request, petitioner estimated that his tax liability was $ 790; since he paid $ 4,672 through payroll tax deductions, he reported that no tax was due with the extension form. To be valid, an extension request must meet the following requirements ( sec. 1.6081-4(a)(1), Income Tax Regs.): (1) The application for the extension must be filed on Form 4868, "Application for Automatic Extension of Time to File U.S. Individual Income Tax Return," and must be signed by the taxpayer or his duly authorized representative, sec. 1.6081-4(a)(2), Income Tax Regs.; (2) the application must be filed on or before the due date of the tax return, sec. 1.6081-4(a)(3), Income Tax Regs.; and (3) the application for extension must show the full amount properly estimated as tax, and must be accompanied by full remittance of the amount of tax so estimated, but unpaid as of the date prescribed for the filing of the return. Sec. 1.6081-4(a)(4), Income Tax Regs.
Even though petitioner filed his extension request on April 16, 1984, and used Form 4868, he did not make a "bona fide and reasonable estimate of his tax liability based *517 on the information available to him at the time he [made] his request for extension." Crocker v. Commissioner, 92 T.C. 899, 908 (1989) (citations omitted). It is not required that the amount reported on Form 4868 be exact, Cannata v. Commissioner, T.C. Memo 1990-502, simply that it be a bona fide and reasonable estimate. Petitioner's assertions were neither. Petitioner, as an accountant, should have known that his tax liability was actually far more than $ 790, as reported on Form 4868. We identify herein approximately $ 40,000 of unreported income and overstated deductions for 1983 alone. Such an amount should have made petitioner aware that his tax liability was unreasonably estimated at $ 790. Since the information is available to us today, it certainly was available to petitioner in 1983. Therefore, we find petitioner's extension request was invalid. The due date for petitioner's IRA contribution was not extended. As he paid his contribution on July 2, 1984, we find that it was not made timely. Respondent's disallowance of the IRA deduction for 1983 is therefore sustained. [5]
*518 2. 1985
Respondent concedes that petitioner paid $ 2,000 as his 1984 IRA contribution before April 15, 1985, and does not contest the deduction. Petitioner made no other payments to his IRA in 1985. Petitioner paid $ 2,000 as his 1985 IRA contribution on April 2, 1986. Although the carbon copy of the check petitioner used to make the payment is arguably difficult to read, petitioner presented a copy of the bank statement for his IRA, which covers the period January 1, 1986, to January 1, 1987. This bank statement shows a payment made by petitioner for his 1985 IRA contribution on April 2, 1986. Therefore, we find that he is entitled to a deduction for the contribution. G. Partnership Loss
Petitioner deducted his distributive share of the losses incurred by Minter-Clayvon Company (the partnership) for 1983 through 1985 in the amounts of $ 4,250, $ 4,850, and $ 4,043, respectively. Respondent disallowed these deductions on the theory that petitioner's basis in the partnership was zero. Petitioner testified that each partner originally contributed $ 35,000 to the partnership's capital, but his statement is inconsistent with the settlement statement. Petitioner *519 presented no credible evidence of amounts he contributed to the partnership's capital since the property was purchased. His protestations to the contrary, the partnership information returns do not reflect sufficient information to prove petitioner's basis, as they are replete with mathematical errors and inconsistencies. For each year, the amount reflected in the balance sheet as "Partners' Capital Accounts" does not equal the balance reflected in the "Reconciliation of Partners' Capital Accounts" section of the information return. In fact, the balance sheet reflects a positive balance in the capital accounts, whereas the reconciliation reflects a negative balance; no explanation was given in any of the 3 years for this inconsistency. On each 1983 Schedule K-1, on which the partnership was to report transactions in each partner's capital account, the reconciliation of the total partnership capital is copied. No detail is reported as to the amount of capital contributed by each partner. The closing balance sheet on the 1984 partnership information return is completely different from the opening balance sheet on the 1985 partnership information return. Petitioner, as an accountant, *520 should have known that the closing balance from one year should equal the opening balance of the next. Section 704(d) limits the deduction of a partner's distributive share of partnership loss to the partner's adjusted basis in the partnership at the end of the partnership year. Sec. 1.704-1(d)(1), Income Tax Regs. The partner's adjusted basis in his or her partnership interest is comprised of his or her adjusted basis in property contributed to the partnership. Secs. 705(a) and 722. A liability to which partnership property is subject, to the extent of the property's fair market value, is considered a liability of the owner. Sec. 752(c). Any partnership liabilities to which a partner is liable shall be considered a capital contribution by such partner to the partnership. Sec. 752(a). Moreover, a partner's adjusted basis in the partnership is increased, inter alia, by the partner's distributive share of the partnership's taxable income, since he or she became a partner, section 705(a)(1)(A); and decreased, inter alia, by the partner's distributive share of partnership losses since he or she became a partner. Sec. 705(a)(2)(A). Any loss in excess of the taxpayer's adjusted *521 basis will be allowed in the year in which such excess is repaid to the partnership. Sec. 704(d). Petitioner contributed no more than $ 3,738 to the partnership when it was formed in 1977. [6] He presented no evidence of any capital contributions since then. Petitioner's share of the partnership's liability at December 31, 1983, 1984, and 1985 was $ 12,075, $ 12,495, and $ 12,240, respectively. He testified that the partnership consistently lost approximately $ 4,000 per year. At that rate, his adjusted basis in the partnership was less than zero by 1981. As he did not repay this deficit capital amount, petitioner's distributive share of the partnership's losses are not deductible for the years at issue. H. Itemized Deductions
On petitioners' 1983 and 1984 tax returns, *522 they deducted $ 365 and $ 310, respectively, as miscellaneous itemized deductions. Petitioner and respondent stipulated to miscellaneous itemized deductions for 1983 and 1984 under section 63(f) of $ 514 and $ 1,056, respectively, and we so find. Because petitioners occupied 44 percent of Property 4, we disallowed that portion of the expenses for that property as deductions against petitioners' rental income. The real estate taxes and the mortgage interest so allocated are deductible by petitioners as itemized deductions, as follows: 1983
1984
1985
Real Estate Taxes
N/A
$   453
$   816
Mortgage Interest
N/A
$ 5,250
$ 5,862
I. Fraud
Respondent determined petitioner is liable for additions to tax for fraud under sections 6653(b)(1) and (2) for each year at issue. Section 6653(b)(1) provides that if any part of any underpayment is due to fraud, the addition to tax under this section shall be an amount equal to 50 percent of the underpayment. Moreover, section 6653(b)(2) adds to the tax an amount equal to 50 percent of the interest due on that part of the underpayment attributable to fraud. Fraud is defined as an "intentional wrongdoing on the part of the *523 taxpayer with the specific intent to avoid a tax known to be owing." Akland v. Commissioner, 767 F.2d 618, 621 (9th Cir. 1985) (citing Conforte v. Commissioner, 692 F.2d 587, 592 (9th Cir. 1982)). See Powell v. Granquist, 252 F.2d 56, 60 (9th Cir. 1958). The existence of fraud is a question of fact to be resolved upon consideration of the entire record. Gajewski v. Commissioner, 67 T.C. 181, 199 (1975), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978). Fraud is not to be imputed or presumed, but rather must be established by some independent evidence of fraudulent intent. Beaver v. Commissioner, 55 T.C. 85, 92 (1970); Otsuki v. Commissioner, 53 T.C. 96 (1969). However, fraud may be proven by circumstantial evidence and reasonable inferences drawn from the facts, because direct proof of intent is rarely available. Spies v. United States, 317 U.S. 492, 87 L. Ed. 418, 63 S. Ct. 364 (1943); Powell v. Granquist, 252 F.2d at 61; Rowlee v. Commissioner, 80 T.C. 1111 (1983). The taxpayer's entire course of *524 conduct may establish the requisite fraudulent intent. Stone v. Commissioner, 56 T.C. 213, 223-224 (1971); Otsuki v. Commissioner, 53 T.C. at 105-106. Respondent bears the burden of proof as to additions to tax for fraud under section 6653(b). Further, respondent cannot rely on petitioner's failure to prove error in respondent's determination to meet his burden of proving fraud. Habersham-Bey v. Commissioner, 78 T.C. 304, 312 (1982); Otsuki v. Commissioner, 53 T.C. 96, 106 (1969); Rule 142(a); sec. 7454(a). This burden must be met by clear and convincing evidence. Rule 142(b); Stone v. Commissioner, 56 T.C. 213, 220 (1971). To meet this burden, respondent must show that (1) there was an underpayment, and (2) petitioner intended to evade taxes known to be owing, by conduct intended to conceal, mislead, or otherwise prevent the collection of taxes. Lord v. Commissioner, 525 F.2d 741, 746 (9th Cir. 1975); Stoltzfus v. United States, 398 F.2d 1002, 1004 (3d Cir. 1968); Parks v. Commissioner, 94 T.C. 654, 661 (1990). Respondent *525 need not prove the precise amount of the underpayment resulting from fraud; so long as he shows that "any part of any underpayment * * * is due to fraud," the addition to tax will be upheld. Sec. 6653(b)(1); Conforte v. Commissioner, 692 F.2d at 590. Petitioner understated gross income by $ 8,985 and $ 992 in 1983 and 1985, respectively. He overstated deductions by approximately $ 40,000 for each year in issue. Given petitioner's knowledge and experience, such actions can only be explained by fraudulent intent. A taxpayer's experience and knowledge, especially knowledge of the tax laws, is a further justification for the inference of fraud. Solomon v. Commissioner, 732 F.2d 1459, 1462 (6th Cir. 1984), affg. per curiam a Memorandum Opinion of this Court; Tooke v. Commissioner, 595 F.2d 1299 (9th Cir. 1979), affg. a Memorandum Opinion of this Court. Courts have relied on a number of indicia of fraud in deciding section 6653(b) cases. Although no single factor is necessarily sufficient to establish fraud, the existence of several indicia is persuasive circumstantial evidence of fraud. Solomon v. Commissioner, 732 F.2d at 1461; *526 Petzoldt v. Commissioner, 92 T.C. 661, 700 (1989); Beaver v. Commissioner, 55 T.C. at 93. The Ninth Circuit Court of Appeals, in Bradford v. Commissioner, 796 F.2d 303, 307-308 (1986), affg. a Memorandum Opinion of this Court, stated that the existence of the following facts, inter alia, supported a finding of fraudulent intent: (1) Understatement of income; (2) maintenance of inadequate records; (3) implausible or inconsistent explanation of behavior; and (4) failure to file tax returns. Petitioner is an accountant who prepared income tax returns for others. He has a bachelor's and a master's degree in business. He enrolled in continuing education classes throughout the years at issue. He certainly knew the tax laws to which he was subject. Likewise, the paucity of credible records maintained by Mr. Minter is a clear indication of his intent to conceal petitioners' tax liability. Presentation of photocopies of duplicate copies of checks, of illegible "receipts" for supposed expenditures, of clearly personal items such as infant wear, of childbirth classes and dry cleaning, and of receipts issued to petitioner's father *527 was directed at misleading respondent and this Court as to the true extent of petitioner's tax liability. It was only after this Court warned petitioner during pretrial discovery that he must cooperate with respondent, or else risk having respondent's proposed facts accepted as established, that petitioner agreed to constructively discuss the issues. Most of petitioner's explanations of his actions were implausible or incredible. He expected the Court to believe that he was able to identify the source of certain deposited items, up to 7 years after the fact, simply based on memory. His testimony regarding one receipt from a general merchandise store is especially troubling. He expected us to accept that he was able to identify at trial a receipt from 1984 in the amount of $ 12.72 as being for roofing paper. We are not persuaded. For the reasons stated above, we find respondent proved by clear and convincing evidence that petitioner fraudulently intended to evade taxes which he knew to be owing, and that his actions were directed at concealing his tax liability. Therefore, petitioner is liable for the additions to tax for fraud under sections 6653(b)(1) and (2) for all the *528 years in issue. As a general rule, if a husband and wife file a joint income tax return, they are jointly and severally liable for the tax computed on the aggregate income, including additions to tax and penalties. Secs. 6013(d)(3) and 6659. However, the addition to tax for fraud is not imputed from one spouse to another. In the case of a joint return, respondent must prove fraud as to each spouse charged for the addition to tax. Sec. 6653(b); Stone v. Commissioner, 56 T.C. 213, 227-228 (1971). Respondent has failed to prove overt acts of copetitioner sufficient to justify imposing a section 6653(b) addition to tax against her, and accordingly, has not met his burden of proving her fraudulent intent. Respondent asserted in the notice of deficiency that, in the alternative, petitioners are liable for the additions to tax for negligence or intentional disregard of rules and regulations under section 6653(a). Respondent's determination as to negligence is prima facie correct, and the burden is upon the taxpayer to prove the addition erroneous. Enoch v. Commissioner, 57 T.C. 781, 802 (1972). Notwithstanding this burden, section 6653(b)(3) *529 states that the addition to tax with regard to underpayments applicable to fraud shall be in lieu of any amount determined with regard to negligence. Unlike the addition to tax for fraud which must be proven for each taxpayer, even if a joint return is filed, the addition to tax for negligence applies jointly and severally. Therefore, since we found petitioner liable for fraud under section 6653(b) on the entire underpayment, we cannot hold copetitioner liable for negligence under section 6653(a) on the same underpayment. [7]
J. Substantial Understatement of Income Tax Liability
Section 6661 imposes an addition to tax if there is a substantial understatement of income tax for any taxable year. The addition to tax will be made in an amount equal to 25 percent of the amount of any underpayment attributable to such understatement, for all such additions assessed after October 21, 1986. Sec. 6661(a); Parks v. Commissioner, 94 T.C. at 665. *530 A substantial understatement is one which exceeds the greater of 10 percent of the tax required to be shown on the return, or $ 5,000. Sec. 6661(b). If petitioners' understatement is substantial, they will be liable for the addition to tax, unless either of the reduction provisions of section 6661(b)(2)(B) applies. The amount of the understatement on which the addition to tax is based will be reduced by that portion of the understatement which is attributable either to (1) a position adopted by the taxpayer for which substantial authority exists, sec. 6661(b)(2)(B)(i), or (2) any item with respect to which the taxpayer has made adequate disclosure of the relevant facts in the tax return or any statement attached thereto, sec. 6661(b)(2)(B)(ii). Petitioners did not have substantial authority for their positions in any year at issue. They did not adequately disclose any facts pertaining to the understated gross receipts or overstated deductions on any of the tax returns as filed, or on any statements attached to such returns. Therefore, after petitioners' tax liability has been recomputed based on the foregoing under Rule 155, if such liability exceeds the tax shown on petitioners' *531 tax return by the greater of 10 percent of the correct tax for that year or $ 5,000, petitioners will be liable for the section 6661 addition to tax for that year. To reflect our findings and conclusions herein, Decisions will be entered under Rule 155. Appendix A Computation of Unreported Income 1983  Net Deposits
$ 81,224 Less: Income reported on
income tax return:
Net Wages
(31,669)
Interest Income
(9,350)
Dividend Income
-0-  Accounting Activity and/or
(9,950)
Computer Consulting Income
Rental Income
(8,700)
Balance
21,555 Less: Proceeds from non-
taxable sources
1981 Federal Tax Refund
(4,070)
1983 and 1984 Federal
Tax Refunds
-0-  1983 and 1984 State
Tax Refunds
-0-  Loan from Edward Law
(8,500)
Loan from Michael Clayvon
-0-  Unreported Income
$  8,985 Appendix B Computation of 1983 Accounting Business Expenses -- Petitioner Shown below are the deductions which petitioner proved for 1983, or for which he presented sufficient evidence to enable this Court to estimate his true expenses, and which we therefore allow: Total Deducted
Total
on Tax Return Allowed
Explanation
Automobile Expense
$  5,146
$   710
A
Office Rent
3,600
-0-
B
Telephone
366
-0-
B
Accounting Supplies
444
90
C
Travel and Entertaining
1,150
-0-
D
Business Meals
888
-0-
D
Postage
115
17
E
Education
2,036
189
C
Office Expense
233
11
C
Repairs and Maintenance
775
-0-
B
Secretarial
876
-0-
B
Equipment Depreciation
1,250
-0-
B
Journals and Publications
575
105
C
Totals
$ 17,454
$ 1,122
*532 A Petitioner claimed $ 5,146 as automobile expenses relating to the accounting business. Petitioner testified that he computed his accounting-activity-related automobile expenses based on the actual amount he spent. Petitioner maintained no log, book, maintenance records, or other contemporaneous document attesting to the usage of the automobiles. Petitioner incurred $ 2,806 of total automobile expense for 1983, before allocation between his accounting business, his rental properties, and his personal use. He testified only as to the number of miles he drove for the rental activity. Therefore, we allocated his total expense to each activity based on the relative percentage of his gross income derived from each activity, as follows:
Gross Relative
Automobile
Income
Percentage
Expense
Wages and Interest Income
$ 46,828
63.0%
$ 1,768
Accounting Income
18,779
25.3 710
Rental Income
8,700
11.7 328
Totals
$ 74,307
100.0%
$ 2,806
See Barnes v. Commissioner, T.C. Memo 1981-539; Thomas v. Commissioner, T.C. Memo 1969-108. We find the portion of his automobile expense allocated to his wages and *533 interest income is to be a nondeductible personal expenditure, sec. 262; the portion of his automobile expense allocated to his rental activities will be discussed below; the portion of his automobile expense allocated to his accounting business is deductible.
B Petitioners did not document any portion of the deduction they claimed on their tax return, as follows: 1. Office Rent - Petitioner deducted $ 3,600 for office rent related to his accounting business, but presented no evidence that this amount was paid, including no copy of a lease for his rental of this office space. 2. Telephone - Petitioner deducted $ 366 as telephone expenses for the year. However, he presented no evidence of business usage of his telephone. He only showed the canceled checks for payment of his telephone service at his home, with no records as to what portion thereof was the basic line charge or what portion was for accounting-activity-related calls. 3. Repairs and Maintenance; and Secretarial - Petitioner deducted $ 775 and $ 876 as repairs and maintenance and for secretarial expenses for the year, respectively. He testified that he used "small operators" in his community *534 to do this work. Petitioner presented no time sheets or invoices that he received, nor a lease which showed he was responsible for maintenance of the office space. Moreover, he prepared no Forms 1099 for these individuals. 4. Equipment Depreciation - Petitioner deducted $ 1,250 as depreciation of equipment. However, he presented no evidence of his basis in the equipment, the date he put it into service, or its useful life.
C We allowed the portion of the expense which was stipulated by the parties, or which was proven by petitioner, as follows: 1. Accounting Supplies - Petitioner deducted $ 444 as accounting supplies for the year. He and respondent stipulated to accounting supplies of $ 90 for 1983. Petitioner presented no evidence of amounts paid for accounting supplies in excess of the stipulated amount. Petitioner presented a substantial number of invoices for accounting supplies purchased by his father or Tax Methods Company. 2. Education - Petitioner deducted $ 2,036 for education expenses related to his accounting activity. He presented evidence of $ 189 in continuing education costs. Petitioner also presented evidence of $ 120 paid to the "Department *535 of Real Estate," with no description of the course material, and only a general description of its relevance to the accounting activity. 3. Office Expense - Petitioner deducted $ 233 for office expense related to his accounting activity, but presented only $ 11 worth of receipts for the year. 4. Journals and Publications - Petitioner deducted $ 575 as the cost of journals and publications for the year. He and respondent stipulated to $ 105, and petitioner presented no evidence of expenses in addition to this amount, other than amounts paid to "Publisher's Clearing House" or "National Geographic"; petitioner presented no explanation of the accounting activity purpose of such publications.
D Sec. 274(d) states that no deduction will be allowed for any traveling expense, sec. 274(d)(1), or for any activity which is generally considered to constitute entertainment, section 274(d)(2), unless the taxpayer maintained records sufficient to establish (1) the amount of each expense, (2) the time and place of the activity, (3) the business purpose of the activity, and (4) the business relationship of the person entertained to the taxpayer. Petitioner maintained no such *536 records. Consequently, he is not allowed a deduction for these expenditures, as follows: 1. Travel and Entertaining and Business Meals - Petitioner deducted $ 1,150 and $ 888 for travel and entertaining and for accounting business meals, respectively. Even though he presented evidence of travel to Las Vegas, Nevada, and San Francisco, California, and several receipts from various restaurants, petitioner presented no evidence whatsoever of the person with whom he dined or traveled, the business purpose of the meal or travel, or what was discussed at each occasion. Several of the receipts for travel are in the name of petitioner's wife, then his girlfriend.
E Petitioner did not present evidence that the portion of the postage expense he documented, $ 68, was for his accounting business. Therefore, we allowed $ 17, that portion of his postage expense as is represented by the relative percentage of his accounting business gross income to his total gross income, determined in n. A above. Appendix C Computation of 1984 Accounting Business Expenses -- Petitioner Shown below are the deductions which petitioner proved for 1984, or for which he presented sufficient evidence *537 to enable this Court to estimate his true expenses, and which we therefore allow: Total Deducted
Total
on Tax Return Allowed
Explanation
Automobile Expense
$  4,981
$ 192
A
Office Rent
3,600
-0-
B
Telephone
164
-0-
B
Accounting Supplies
212
85
C
Travel and Hotel
710
-0-
D
Dinners and Meals
540
-0-
D
Postage Expense
95
11
E
Education Expense
854
177
C
Office Supplies
198
-0-
B
Repairs and Maintenance
614
-0-
B
Secretarial and Clerical
475
-0-
B
Equipment Depreciation
1,250
-0-
B
Trade Journals and
Publications
335
205
C
Totals
$ 14,028
$ 670
A Petitioner claimed $ 4,981 as automobile expenses relating to the accounting business. Petitioner testified that he computed his accounting-activity-related automobile expenses based on the actual amount he spent. Petitioner maintains no log book, maintenance records, or other contemporaneous document attesting to the usage of the automobiles. Petitioner incurred $ 2,669 of total automobile expense for 1984 before allocation between his accounting business, his rental properties, and his personal use. He only testified as to the number of miles he drove for the rental activity. *538 Therefore, we allocated his total expense to each activity based on the relative percentage of his gross income derived from each activity, as follows:
Gross Relative
Automobile
Income
Percentage
Expense
Wages and Interest Income
$ 71,599
79.8%
$ 2,130
Accounting Income
6,500
7.2 192
Rental Income
11,650
13.0 347
Totals
$ 89,749
100.0%
$ 2,669
See Barnes v. Commissioner, T.C. Memo 1981-539; Thomas v. Commissioner, T.C. Memo 1969-108. We find the portion of his automobile expense allocated to his wages and interest income to be a nondeductible personal expenditure, sec. 262; the portion of his automobile expense allocated to his rental activities will be discussed below; the portion of his automobile expense allocated to his accounting business is deductible.
B Petitioners did not document any portion of the deduction they claimed on their tax return, as follows: 1. Office Rent - Petitioner deducted $ 3,600 for office rent related to his accounting activity, but presented no evidence whatsoever that this amount was paid, including no copy of a lease for his rental of this office *539 space. 2. Telephone - Petitioner deducted $ 164 as telephone expenses for the year. However, he presented no evidence of business usage of his telephone. He only showed the canceled checks for payment of his telephone service at his home, with no records as to what portion thereof was the basic line charge or what portion was for business-related calls. 3. Office Supplies - Petitioner deducted $ 198 for office expense related to his accounting activity, but presented no receipts for the year. 4. Repairs and Maintenance; and Secretarial and Clerical Petitioner deducted $ 614 and $ 475 as repairs and maintenance and for secretarial and clerical expenses for the year, respectively. He testified that he used "small operators" in his community to do this work, but he prepared no Forms 1099 for these individuals. Further, petitioner presented no time sheets or invoices that he received, nor a lease which showed he was responsible for maintenance of the office space. 5. Equipment Depreciation - Petitioner deducted $ 1,250 as depreciation of equipment. However, he presented no evidence whatsoever of his basis in the equipment, the date he put it into service, *540 or its useful life.
C We allowed the portion of the expense which was stipulated by the parties, or which was proven by petitioner, as follows: 1. Accounting Supplies - Petitioner deducted $ 212 for accounting supplies for the year, but presented only $ 85 worth of receipts for the year. He also presented a substantial number of invoices for accounting supplies purchased by his father or Tax Methods Company. 2. Education Expense - Petitioner deducted $ 854 for education expenses related to his accounting activity. He presented evidence of $ 177 in continuing education costs. 3. Trade Journals and Publications - Petitioner deducted $ 335 as the cost of journals and publications for the year. He and respondent stipulated to $ 205, and petitioner presented no evidence of expenses in addition to this amount.
D Section 274(d) states that no deduction will be allowed for any traveling expense, sec. 274(d)(1), or for any activity which is generally considered to constitute entertainment, sec. 274(d)(2), unless the taxpayer maintained records sufficient to establish (1) the amount of each expense, (2) the time and place of the activity, (3) the business purpose *541 of the activity, and (4) the business relationship of the person entertained to the taxpayer. Petitioner maintained no such records. Consequently, he is not allowed a deduction for these expenditures, as follows: 1. Travel and Hotel; and Dinners and Meals - Petitioner deducted $ 710 and $ 540 for travel and hotel and for dinners and meals, respectively. Even though he presented evidence of travel to Cincinnati, Ohio, and Cleveland, Ohio, and several receipts from various restaurants, petitioner presented no evidence whatsoever as to the person with whom he dined or travelled, the business purpose of the meal or travel, or what was discussed at each occasion. Several of the receipts for travel are in petitioner's wife's name.
E Petitioner did not present evidence that the portion of the postage expense he documented was for his accounting activity. Therefore, we allowed $ 11, that portion of his postage expense as is represented by the relative percentage of his accounting activity gross income to his total gross income, determined in n. A above. Appendix D
Computation of 1985 Accounting Business Expenses -- Petitioner Shown below are the deductions which petitioner *542 proved for 1985, or for which he presented sufficient evidence to enable this Court to estimate his true expenses, and which we therefore allow: Total Deducted
Total
on Tax Return Allowed
Explanation
Automobile Expense
$  3,333
$ 399
A
Office Rent
3,600
-0-
B
Stationery and Supplies
475
190
C
Dinners and Meals
310
-0-
D
Education
683
303
C
Clerical and Typing
404
-0-
B
Cleaning and Maintenance
180
-0-
B
Small Tools and Repairs
201
-0-
B
Equipment Depreciation
1,044
-0-
B
Gifts and Promotion
75
-0-
B
Totals
$ 10,305
$ 892
A Petitioner claimed $ 3,333 as automobile expenses relating to the accounting business. Petitioner testified that he computed his accounting business-related automobile expenses based on the actual amount he spent. Petitioner maintained no log book, maintenance records, or other contemporaneous document attesting to the usage of the automobiles. Petitioners incurred $ 5,398 of total automobile expense for 1985 before allocation between petitioner's accounting business, copetitioner's computer consulting business, their rental properties, and their personal use. Petitioner only testified as to the number *543 of miles he drove for the rental activity. Therefore, we allocated his total expense to each activity based on the relative percentage of their gross income derived from each activity, as follows:
Gross
Relative
Automobile
Income
Percentage
Expense
Wages, Interest, and
Dividend Income
$ 79,558
80.5%
$ 4,345
Accounting Income
7,273
7.4 399
Computer Consulting
Income
1,250
1.3 70
Rental Income
10,710
10.8 584
Totals
$ 98,791
100.0%
$ 5,398
See Barnes v. Commissioner, T.C. Memo 1981-539; Thomas v. Commissioner, T.C. Memo 1969-108; We find the portion of their automobile expense allocated to wages, interest and dividend income to be a nondeductible personal expenditure, sec. 262; and the portion of their automobile expense allocated to rental activities will be discussed below. The portion of his automobile expense allocated to his accounting business is deductible.
B Petitioners did not document any portion of the deduction they claimed on their tax return, as follows: 1. Office Rent - Petitioner deducted $ 3,600 for office rent related to his accounting business, but presented no evidence *544 whatsoever that this amount was paid, including no copy of a lease for his rental of this office space. 2. Clerical and Typing, Cleaning and Maintenance, and Small Tools and Repairs - Petitioner deducted $ 404, $ 180, and $ 201 as clerical and typing, cleaning and maintenance, and small tools and repairs, respectively. He testified that he used "small operators" in his community to do this work, but he prepared no Forms 1099 for these individuals. Further, petitioner presented no time sheets or invoices that he received, nor a lease which showed he was responsible for maintenance of the office space. 3. Equipment Depreciation - Petitioner deducted $ 1,044 as depreciation of equipment. However, he presented no evidence whatsoever of his basis in the equipment, the date he put it into service, or its useful life. 4. Gifts and Promotion - Petitioner deducted $ 75 as gifts and promotion for the year, but presented no evidence of amounts actually paid. He presented evidence of gift-like items bought two days before Christmas 1985, such as men's clothing, a television, toys, puzzles, items from Radio Shack, and groceries. However, none of these items listed the donee *545 or the business purpose of the gift, if any.
C We allowed the portion of the expense which was stipulated by the parties, or which was proven by petitioner, as follows: 1. Stationery and Supplies - Petitioner deducted $ 475 as stationery and supplies for the year, but presented only $ 190 worth of receipts for the year. Petitioner presented a substantial number of invoices for accounting supplies purchased by his father or Tax Methods Company. 2. Education - Petitioner deducted $ 683 for education expenses related to his accounting business. He presented evidence of $ 303 in continuing education costs. D Section 274(d) states that no deduction will be allowed for any traveling expense, sec. 274(d)(1), or for any activity which is generally considered to constitute entertainment, sec. 274(d)(2), unless the taxpayer maintained records sufficient to establish (1) the amount of each expense, (2) the time and place of the activity, (3) the business purpose of the activity, and (4) the business relationship of the person entertained to the taxpayer. Petitioner maintained no such records. Consequently, he is not allowed a deduction for these expenditures.
*546 Appendix E Computer Consulting Expenses -- CoPetitioner Shown below are the expenses claimed for copetitioner's computer consulting business in 1985, and the portion of each allowed: Total Deducted
Total
on Tax Return
Allowed
Explanation
Automobile Expenses
$ 2,796
$    70
A
Stationery and Supplies
396
658
B
Rental Automobiles
289
0
B
Books and Publications
111
155
B
Telephone Expense
333
0
C
Depreciation -- Equipment
1,250
533
D
Legal Filing and Costs
40
50
E
Totals
$ 5,215
$ 1,466
A As we discussed earlier, petitioners presented receipts for automobile expenses for 1985 which totaled $ 5,398. Based on our above computation, copetitioner is allowed a deduction for automobile expense of $ 70. B We allowed the portion of the expense which was stipulated by the parties, or which was proven by petitioners, as the case may be. C Copetitioner deducted $ 333 as telephone expenses for the year. However, she presented no evidence of business usage of the telephone, including no records as to what portion of the amount deducted was for business purposes, or what portion was for the basic line charge of a personal telephone. Therefore, *547 we find that none of the claimed deduction is allowed. D Copetitioner deducted $ 1,250 as depreciation of equipment, computed under the straight-line method of depreciation over an estimated useful life of 5 years. The cost of the equipment used by copetitioner in this computation was $ 6,250. However, copetitioner presented proof of $ 5,334 paid for equipment. Petitioners presented no log or other contemporaneous record of the portion of this equipment that was used for business purposes. Computer equipment is included in the definition of "listed property." Sec. 280F(d)(4)(A)(iv). Section 1.280F-3T(d)(3), Temporary Income Tax Regs., 49 Fed. Reg. 42708 (Oct. 24, 1984) requires that a record be maintained by the taxpayer to verify the business usage of all listed property. If the business usage is not greater than 50 percent, the property is not eligible for regular investment credit under sec. 46(a)(1), sec. 280F(b)(1), and the property must be depreciated under the straight-line method over the property's "earnings and profits life," i.e., 5 years in the case of computer equipment. Sec. 280F(b)(2); sec. 1.280F-3T(e), Temporary Income Tax Regs., 49 Fed. Reg. 42708 *548 (Oct. 24, 1984). In spite of the fact that copetitioner did not maintain a log to enable us to determine the business usage of her computer equipment, we find that 50 percent of its use was for her computer consulting business. Nonadherence to the recordkeeping requirement would make a finding of zero business usage reasonable. However, given that respondent did not argue that copetitioner was not engaged in the business for a profit, and that petitioner generated $ 1,250 from computer consulting, we find the equipment was at least partially used in copetitioner's business. See Cohan v. Commissioner, 39 F.2d 540 (1930); Commissioner v. Duberstein, 363 U.S. 278, 289, 4 L. Ed. 2d 1218, 80 S. Ct. 1190 (1960) ("Decision * * * must be based ultimately on the application of the fact-finding tribunal's experience with the mainsprings of human conduct to the totality of the facts of each case."). Moreover, petitioner, who prepared income tax returns for others, did not claim the investment credit that would have been available to him and copetitioner if the equipment was used more than 50 percent for business purposes. He must have been cognizant of section 280F(b)(1), discussed *549 above. Therefore, we find copetitioner is allowed a depreciation deduction of $ 533 for 1985 ($ 5,334 at 50 percent business usage on a straight-line basis over 5 years.)
E Copetitioner deducted $ 40 of costs to register the fictitious name of her computer consulting business. She presented proof of payment of $ 50 for this purpose. Such costs are not "start-up expenditures" as defined by section 195(c)(1), as she was engaged in the business before the costs were incurred, albeit intermittently. Therefore, we find that the costs are deductible.
Appendix F Rental Property Expenses Shown below are the deductions for petitioners' rental properties, which they corroborated, or which were stipulated by the parties, and which are therefore allowed: Explanation
1983
1984
1985
Automobile Expense
A
$     347
$    584
Cleaning and Rubbish
553
612
Depreciation
B,C
12,589
13,268
Gardening
2,191
121
Insurance
1,236
1,178
Interest Expense
D
16,948
16,829
Legal and Accounting
N/A N/A Pest Service
177
250
Plumbing
B
377
141
Painting
B
-0- 162
Roofing
B
N/A N/A Replacements
B
-0- -0-
Utilities
778 1,300
Taxes
2,662 1,782
Office Supplies
-0- N/A Repairs
B
488 N/A Electric
B
92 -0-
Amortization
45 45
Telephone
N/A -0-
Totals
26,962
38,483 36,272
Amount Deducted
43,875
[1] 67,059
[2] 56,928
Amount Disallowed
[3] $ 16,913
$  28,576 $ 20,656
*550 *551 A Petitioner claimed automobile expenses for his rental activity for 1984 and 1985 based on mileage supposedly driven, in the amounts of $ 2,949 and $ 2,873, respectively. He claims to have driven approximately 13,000 miles each year in this regard. We find this contention wholly incredible, given that petitioner worked 40 hours per week at his position with the county of Los Angeles, and maintained a sideline accounting business. There are simply not enough hours in the day to have done all this. See Carr v. Commissioner, T.C. Memo 1979-400 (where records were unavailable, this Court accepted credible oral evidence of taxpayer). Melville v. Commissioner, T.C. Memo 1979-398 (where a "clearly sincere" taxpayer did not have adequate proof of mileage driven, this Court accepted secondary evidence). The issue of petitioner's credibility notwithstanding, by his own admission, petitioner simultaneously used more than one vehicle in his rental activities. He is therefore precluded from using the optional mileage allowance. Rev. Proc. 82-61, sec. 3.01(2)(a), 1982-2 C.B. 849, 850 states that "The optional *552 method is not acceptable for computing the deductible expense of * * * (B) two or more automobiles used simultaneously." Therefore, petitioners must base their deduction for automobile expenses in rental activities on actual expenses. The amount of such deductions were determined earlier to be $ 347 and $ 524 for 1984 and 1985.
B The law is well defined as to the distinction between repairs and capital expenditures. If an expenditure does not "materially add to the value of the property, nor appreciably prolong its life," it may be deducted as an expense. Sec. 1.162-4, Income Tax Regs. On the other hand, an expenditure "made to increase the value of any property or * * * [to restore] property or [to make] good the exhaustion thereof" must be added to the taxpayer's basis in the property. Sec. 1.263(a)-1(a), Income Tax Regs. The cost of "replacements" must be added to the property's basis to the extent that they "arrest deterioration and appreciably prolong the life of the property." Sec. 1.162-4, Income Tax Regs. Expenditures that are added to the property's basis can be depreciated in accordance with section 168. Over the years at issue, petitioners documented or *553 stipulated to $ 3,058 and $ 1,170 of repairs or maintenance to the various systems in their rental properties. [8] Of this total, $ 2,101 and $ 867 was paid for "replacements." We find that the amounts paid for repairs or maintenance were for deductible repairs, but the cost of the replacements must be capitalized, and depreciated in accordance with section 168. See Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930).
C Petitioner stated that he agreed to respondent's determination of the depreciation deduction for each year at issue. For 1985, petitioner presented evidence of $ 2,553 paid for carpets. As he accepted respondent's determination of the depreciation deduction, no additional deduction was noted above. D Although petitioner did not present documentation of the amount paid for interest expense for 1985 for Property 4, he presented evidence of the balance of the loan at December 31, 1985, the interest rate in effect throughout 1985, and the payment of each monthly payment for 1985. Based on this evidence, we computed the interest paid *554 by petitioners on their loan for Property 4 to be $ 13,322, and allocated 44 percent to the personal-use portion of the property. The amount noted above as interest expense documented by petitioner is therefore comprised of the following items:
Amount Stipulated for Property 1
$  1,305
Amount Stipulated for Property 3
8,064
Amount Determined for Property 4
7,460
Total
$ 16,829
Appendix G Summary of Adjustments The following adjustments are to be made to petitioners' tax returns as filed, without regard to intervening notices of deficiency, or concessions made by the parties: 1983
1984
1985
1  Gross Income
Unreported Income
for each year is
comprised of the
following amounts:
Accounting Activity
$  8,829
N/A
Condemnation Award
N/A
N/A
Interest Income
156
N/A
Totals
$  8,985
N/A
[1] $    992
2  Accounting Activity
Expenses-Petitioner
The expenses
disallowed for
each year total
as follows:
$ 16,332
$ 13,358
$  9,413
3  Computer Consulting
Expenses
The expenses
disallowed
for 1985 are
as follows:
N/A
N/A
$  3,749
4  Rental Property
Expenses
a.  The expenses
disallowed for
each year are
as follows:
[2] $ 16,913
$ 28,576
$  20,656
4  Rental Property
b.  Petitioners are
entitled to
deductions for
depreciation of
replacements,
placed in service
in the year
indicated, with
the following
bases:
$    648
$  2,101
$    867
5  Individual Retirement
Account
Petitioner's deduction
for IRA contribution
is disallowed for
1983, but allowed for
1985. Therefore,
the following
adjustments are
required:
$  2,000
N/A
$    -0-
6  Partnership Loss
The pass-through
loss deductions
claimed by
petitioner are
disallowed in
their entirety
as follows:
$  4,250
$  4,850
$  4,043
7  Itemized Deductions
a.  Petitioners are
entitled to
miscellaneous
itemized deduc-
tions in addition
to the amount
originally
deducted, as
follows:
$    149
$    746
N/A
7  Itemized Deductions
b.  Petitioners are
allowed the
following
amounts in
addition to
the amounts
originally
deducted:
i.  Real Estate
Taxes
N/A
$    187
$    188
ii. Mortgage
Interest
N/A
$  3,800
$   1,405
*555 Footnotes
1. Unless otherwise noted, all section references are to the Internal Revenue Code, as amended and in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
*. 50 percent of the interest due on $ 54,628, $ 25,846 and $ 34,901, respectively.↩
*. 50 percent of the interest due on $ 54,628, $ 25,846 and $ 34,901, respectively.↩
2. Petitioners made a transfer on November 12, 1985, in the amount of $ 2,142, from their account at Engineers Federal Credit Union, account number 30596690-02 to an account at Public Services Federal Credit Union, account number 554382-9.↩
3. The evidence indicates that unreported income for 1985 was $ 3,617. However, since respondent did not move to amend the pleadings to conform to the evidence under Rule 41(b), we will not do so.↩
4. Respondent has implicitly conceded that petitioners were engaged in their rental activities for a profit. See Bolaris v. Commissioner, 776 F.2d 1428, 1433 n. 5 (9th Cir. 1985), affg. in part and revg. in part 81 T.C. 840 (1983); Jasionowski v. Commissioner, 66 T.C. 312, 321↩ n. 6 (1976).
5. Since respondent did not raise a possible issue of excess contribution under sec. 4973, we decline to do so.↩
6. Petitioner testified that he and his partners made contributions to the partnership on an equal basis. Petitioner therefore contributed one-half of the total contributed by the partners at the inception of the partnership, or $ 3,738.↩
7. See, e.g., Congelliere v. Commissioner, T.C. Memo 1990-265↩.
1. Petitioners stated on their 1984 tax return that they occupied 15 percent of the space at Property 4. The amount reflected here represents the deduction claimed after the 15-percent allocation. Petitioners and respondent stipulated that 44 percent of Property 4 was occupied by petitioners. The deductions allowed are after the allocation for this personal use.↩
2. Petitioners stated on their 1985 tax return that they occupied 33 percent of the space at Property 4. The amount reflected here represents the deduction claimed after the 33-percent allocation. Further, petitioners deducted only $ 56,928, even though the expenses they listed totalled $ 57,428. Petitioners and respondent stipulated that 44 percent of Property 4 was occupied by petitioners. The deductions allowed are after the allocation for this personal use.↩
3. The amount determined by the Court was less then the amount stipulated to by the parties. Since respondent did not move to amend the pleadings to conform to the evidence under Rule 41(b), this Court will not increase petitioners' liability.↩
8. These amounts included expenditures for plumbing, painting, roofing, electrical, or general repairs.↩
1. These amounts were stipulated by the parties. The Court's findings in these instances would, in effect, increase the petitioners' liability.↩
2. See supra↩ note 1.