**Sally CONFORTE, Petitioner-Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

**Joseph CONFORTE, Petitioner-Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

Nos. 81–7573, 81–7576.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 10, 1982.

Decided Nov. 5, 1982.

Stay Denied Jan. 12, 1983.
See 103 S.Ct. 663.

Bruce I. Hochman, Beverly Hills, Cal., for petitioner-appellant.

Farley P. Katz, Washington, D.C., argued, Michael L. Paup, Farley P. Katz, Washington, D.C., on brief, for respondent-appellee.

Petition to Review a Decision of The Tax Court of the United States.

Before MERRILL, Senior Circuit Judge, KASHIWA * and WALLACE, Circuit Judges.

WALLACE, Circuit Judge:

Joseph and Sally Conforte appeal from a decision of the tax court sustaining tax deficiencies and penalties which had been assessed against them for the calendar years 1973 through 1976. *Conforte v. Commissioner,* 74 T.C. 1160 (1980). Jurisdiction is based on 26 U.S.C. § 7482. They question the tax court's failure to limit their tax payments at the 50 percent maximum rate and its application of fraud penalties. In addition, the government has moved to dismiss the appeal of Joseph Conforte on the ground that he is a fugitive from justice. As to Sally Conforte's appeal we affirm in part, reverse in part, and remand. The motion to dismiss the appeal of Joseph Conforte is conditionally granted.

I

The Confortes, who were husband and wife during the years in question, owned and operated the Mustang Ranch Brothel (Mustang Ranch), a legal house of prostitution located in and licensed by Storey County, Nevada. For each of the years 1973 through 1976, the Confortes filed a Form 1040, U.S. Individual Income Tax Return, which reflected only their names, addresses, social security numbers, filing status (married, filing a joint return), exemptions, an amount designated as taxable income and computations of income and self-employment tax. In none of the returns did they

---

* Honorable Shiro Kashiwa, Circuit Judge, United States Court of Appeals for the Federal Circuit, sitting by designation.

indicate amounts or descriptions for gross income and deductions. Instead, they attached to each form a statement asserting that they were under investigation by various governmental agencies, that their tax returns would be scrutinized by such agencies with a view to securing information that would lead to criminal prosecution, and that they were therefore asserting their fifth amendment privilege against self-incrimination in refusing to set forth the details of income and expense. They concluded each document by stating that the amount shown on the return as taxable income was believed by them to be a correct amount, but that if determined through appropriate process to be incorrect, they would comply with that determination.

In late 1977, the Internal Revenue Service (the Service) initiated an examination of the Confortes' income tax liability for the years 1973 through 1976. Based on projections of their income and expenses during this period, statutory notices of deficiencies and penalties were issued. The Confortes petitioned the tax court to redetermine the deficiencies and penalties found by the Commissioner.

Subsequently, the grand jury in the district of Nevada returned a ten count indictment against the Confortes for willfully attempting to evade or defeat federal employment taxes during the years 1974 through 1976. The charges arose out of the operation of the Mustang Ranch. Thereafter, the government moved in the Nevada district court for an *ex parte* order disclosing the records of the grand jury investigation of the Confortes for use by the Service in litigating the tax court suit. That same day, the district court entered an *ex parte* order releasing the grand jury materials to the Service. After receiving notice of the order, the Confortes appealed directly to this court. We dismissed the appeal on the ground that the Confortes were not parties to the proceeding in which the disclosure order had been issued and thus did not have standing to appeal. *In re Proceedings Before the Federal Grand Jury for the District of Nevada,* 643 F.2d 641 (9th Cir. 1981). The Confortes then brought a motion in the

tax court to suppress the use of all material obtained from the grand jury. The motion was denied.

The tax court found against the Confortes and they appealed. The following issues are presented: (1) whether the appeal of Joseph Conforte should be dismissed because he is a fugitive from justice; (2) whether the income tax forms filed by the Confortes constitute "returns" for purposes of (i) calculating the fraud penalty pursuant to 26 U.S.C. § 6653(b) and (ii) qualifying for the 50 percent maximum tax on earned income under 26 U.S.C. § 1348; and (3) whether the tax court correctly denied the motion to suppress use of the grand jury material.

## II

Both Confortes were tried on the charge of willfully attempting to evade federal employment taxes, and were convicted on four of the ten counts. Joseph Conforte is currently a fugitive from justice with respect to his conviction. The question presented is whether a fugitive from justice in a criminal case should be allowed to prosecute an appeal in a civil case.

The Supreme Court held in *Molinaro v. New Jersey,* 396 U.S. 365, 366, 90 S.Ct. 498, 499, 24 L.Ed.2d 586 (1970), that an individual who seeks to invoke the processes of the law while flouting them has no entitlement "to call upon the resources of the Court for determination of his claims." *See United States v. Commanding Officer,* 496 F.2d 324, 326 (1st Cir. 1974). Joseph Conforte's attempts to distinguish the application of this rule are unpersuasive. First, he argues that *Molinaro* applies only to appeals of criminal convictions. Although *Molinaro* involved an appeal from a criminal conviction, there is no indication in the Court's decision that the rule stated has any less vitality in civil cases. To the contrary, as the Service points out, and as other courts have recognized, the rule should apply with greater force in civil cases where an individual's liberty is not at stake. *Cf. Broadway v. City of Montgomery, Alabama,* 530 F.2d

657 (5th Cir. 1976) (court refused to hear an appeal from a fugitive who sought damages and injunctive relief from an allegedly illegal state wire tap); *United States v. Commanding Officer, supra* (court refused to hear a petition for a writ of habeas corpus seeking injunctive and declaratory relief from a specific Army regulation since the petitioner was in flight from custody); *Doyle v. United States Department of Justice,* 494 F.Supp. 842, 845 (D.D.C.1980), *aff'd,* 668 F.2d 1365 (D.C.Cir.1981), *cert. denied,* 455 U.S. 1002, 102 S.Ct. 1636, 71 L.Ed.2d 870 (1982) ("If the courts may invoke their inherent equitable powers to refuse to entertain appeals from fugitives who are seeking to overturn criminal convictions, they surely may do so likewise with respect to those fugitives who merely seek relief under the Freedom of Information Act.").

Joseph Conforte also argues that *Molinaro* applies to civil cases only where a fugitive seeks relief based upon a claim related to his prior criminal conviction. This argument is derived from the statement in *Doyle v. United States Department of Justice* that Doyle's Freedom of Information Act suit was "not devoid of relationship to the sentence he is evading." 668 F.2d at 1365. We need not decide whether *Molinaro* demands such a nexus requirement since in this case we have no difficulty concluding that Joseph Conforte's previous conviction for attempted evasion of employment taxes and his tax court appeal are each related components of a general tax evasion scheme.

Conforte further argues that the *Molinaro* rule applies only where review is discretionary with the court. The appeal in *Molinaro* was brought under 28 U.S.C. § 1257 which states that particular judgments or decrees "*may* be reviewed by the Supreme Court . . . ." (emphasis added). However, as we observed in *Johnson v. Laird,* 432 F.2d 77 (9th Cir. 1970), in discussing the basis of the Supreme Court's decision in *Smith v. United States,* 94 U.S. 97, 24 L.Ed. 32 (1876) (a case upon which the Court in *Molinaro* relied):

We recognize the difference between appeals to this court and discretionary writs of certiorari. We do not believe, however, that the Supreme Court's decision in *Smith* . . . was based solely on the discretionary nature of writs of certiorari. Rather, we feel that the decision in *Smith* rests upon the inherent discretion of *any* court to refuse to hear the claim of a litigant who indicates that he will comply with that court's decree only if it is favorable.

432 F.2d at 79 (emphasis in original). Although *Johnson v. Laird* does not mention *Molinaro,* we have applied the *Molinaro* rule to a non-discretionary appeal. *United States v. Wood,* 550 F.2d 435, 438 (9th Cir. 1976).

Joseph Conforte's appeal is dismissed. If within 56 days he submits himself to the jurisdiction of the District Court of Nevada, he may move to reinstate his appeal.

### III

Sally Conforte does not challenge the imposition of a fraud penalty under 26 U.S.C. § 6653(b). She contends, however, that in calculating the penalty the tax court impermissibly failed to give her credit for the tax she acknowledged was due on her tax form and which she actually paid. Section 6653(b) provides that "[i]f any part of any underpayment . . . is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment." For our purposes, the term underpayment is defined in section 6653(c) as a deficiency as that term is defined in 26 U.S.C. § 6211. Section 6211 defines deficiency as the amount by which the true tax due exceeds the sum of: (1) the amount shown by the taxpayer as the tax due on his return if a return was made, *see* § 6211(a)(1)(A), and (2) amounts previously assessed (or collected without assessment) as a deficiency, *see* § 6211(a)(1)(B). Sally Conforte argued to the tax court that the amount of tax shown on her Form 1040 qualified as an "amount shown as the tax by the taxpayer upon his return" within the meaning of section 6211(a)(1)(A). Alternatively, she argued

that the amount of tax shown on her Form 1040 represented an amount previously assessed (or collected without assessment) under section 6211(a)(1)(B).

The tax court rejected both of these arguments, concluding that none of the documents filed could be considered a "return." Thus, the tax court found that for purposes of calculating the amount of the fraud payment, the section 6211(a)(1)(A) and (a)(1)(B) amounts were both zero. As a result, Sally Conforte's "underpayment" was equal to her total tax liability and the fraud penalty was computed as 50 percent of that total tax liability. Since we conclude that the amount of tax shown on Sally Conforte's Form 1040 does qualify as an "amount shown as the tax by the taxpayer upon his return" within the meaning of section 6211(a)(1)(A), we need not decide whether the tax court erred in rejecting her alternative argument regarding the applicability of section 6211(a)(1)(B).

Because the tax court found no "return" had been filed and section 6211(a)(1)(A) reduces the amount of the deficiency only by the amount shown on the "return," the tax court concluded that a fraud penalty would be assessed upon the total amount of taxes due. In arriving at this conclusion, the tax court relied on *Sanders v. Commissioner,* 21 T.C. 1012, 1018 (1954), *aff'd,* 225 F.2d 629 (10th Cir. 1955), *cert. denied,* 350 U.S. 967, 76 S.Ct. 435, 100 L.Ed. 839 (1956), which held that a Form 1040 which does not state specifically the amounts of gross income and the deductions and credits claimed will not constitute a return. However, *Sanders* involved section 291(a) of the 1939 Internal Revenue Code which provided for an addition to tax for failure to file timely returns. The Service argues that in order for a Form 1040 to be recognized as a "return" for tax purposes, it must set forth sufficient "information relating to the taxpayer's income from which the tax can be computed." *United States v. Long,* 618 F.2d 74, 75 (9th Cir. 1980), *quoting United States v. Porth,* 426 F.2d 519, 523 (10th Cir.), *cert. denied,* 400 U.S. 824, 91 S.Ct. 47, 27 L.Ed.2d 53 (1970). However, *Long* involved a conviction for willful failure to file income tax returns under 26 U.S.C. § 7203. There, we explicitly framed the issue as whether Long had " 'made a return' for purposes of § 7203." *Id.* The tax court in Sally Conforte's case stated the issue as "[w]hether the Form 1040 filed by petitioners constitutes a viable return for *all purposes.*" *Conforte v. Commissioner, supra,* 74 T.C. at 1194 (emphasis added). The tax court went on to state:

[S]ound judicial judgment, we believe, compels us to give the same word the same meaning throughout the Code whenever possible and in the absence of statutory direction to the contrary. Therefore, we find that a timely filed Form 1040 which does not constitute a return does not satisfy the requirements of section 6211(a)(1)(A).

*Id.* at 1204.

■ No doubt it is true that clarity and lack of confusion are worthwhile objectives, especially in an already complicated area such as the tax law. Nevertheless, we believe it would be inappropriate for us to conclude without additional analysis that the definition of a "return" for purposes of section 7203 (willful failure to file) and section 291 (25 percent maximum penalty for failure to file on time now codified at 26 U.S.C. § 6651) should be dispositive for purposes of section 6211(a)(1)(A). We therefore do not exclude the possibility that the same word could have a different meaning in different parts of the code. The legislative intent must govern this definitional process. Therefore, we believe that where, as here, a word could well have a different meaning in different statutory contexts, a purpose-oriented approach should be used when interpreting the meaning of the word as it is used in different sections of the Code. *See Don E. Williams Co. v. Commissioner,* 429 U.S. 569, 580–82, 97 S.Ct. 850, 857–58, 51 L.Ed.2d 48 (1977); *AMP, Inc. v. United States,* 492 F.Supp. 27, 32 (M.D.Pa. 1979); *Habersham-Bey v. Commissioner,* 78 T.C. 304, 316–19 (1982).

To demonstrate that Sally Conforte did not file a return, the Service relies primari-

ly on cases in which the taxpayer did not file a return at all. Under 26 U.S.C. §§ 7203 and 6651, the taxpayer's failure to satisfy the return requirement is the essence of the violation itself. Each section provides a penalty, one civil and one criminal, to insure prompt collection of taxes. In our self-assessment system of taxation in which the taxpayer is called upon to supply information for computation, assessment and collection of tax, the return requirement must be so defined as to allow the Service to verify the accuracy of the information it receives. In order to allow government monitoring of the self-assessment system and thereby protect the federal revenues, the courts have required, at a minimum, that a return provide information from which the taxpayer's tax liability could be computed. What we must decide here is whether the same amount of information (i.e., gross income, deductions and credits) is needed to fulfill the purposes of section 6211(a)(1)(A). Thus, the question before us is: when Congress enacted the fraud penalty and in so doing defined deficiency under section 6211(a)(1)(A) to allow a deduction for the amount shown as the tax by the taxpayer upon his return, did it intend to require a return with sufficient information to allow the Service to compute the taxpayer's income?

■ The purposes of the Code's tax fraud provisions and the penalties provided are not difficult to identify. First, and foremost, they act as a safeguard for the protection of federal revenues by discouraging fraudulent attempts to evade taxes. *See Helvering v. Mitchell,* 303 U.S. 391, 399, 401, 58 S.Ct. 630, 633, 634, 82 L.Ed. 917 (1938). Second, they reimburse the government for the expense of discovering and investigating the fraud. *Id.* at 401, 58 S.Ct. at 634. There is another purpose that seems to us implicit from the statutory scheme: that Congress realized that fraudulent tax evasion poses the greatest risk to the federal fisc. Thus, there are provisions in the Internal Revenue Code discouraging negli-

gent return preparation, *see, e.g.,* 26 U.S.C. § 6653(a), and untimely filing of tax returns, *see* 26 U.S.C. § 6651(a), which assess a penalty in an amount far below that provided for in section 6653. In determining the meaning of the words "amount shown as the tax by the taxpayer upon his return" as they are used in section 6211(a)(1)(A), we must keep in mind Congress' purpose to penalize deficiencies resulting from fraud. In the context of the 50 percent penalty of section 6653, fraud is intentional wrongdoing on the part of the taxpayer with the specific intent to avoid a tax known to be owing. *E.g., Powell v. Granquist,* 252 F.2d 56, 60 (9th Cir. 1958).

■ In light of these statutory purposes, we are convinced that the Form 1040 filed for each of the years in question by Sally Conforte should constitute a return for purposes of section 6211(a)(1)(A). Each of these forms contained the amount of tax which she claimed to be owing to the government. Calculating Sally Conforte's deficiency without reference to the amount of tax liability she acknowledged on her return would, therefore, be an application of the fraud penalty in part to conduct which cannot be characterized as fraudulent and which poses no risk to the federal fisc. For purposes of the fraud penalty, whether forms submitted constitute a "return" is determined by whether those materials are sufficient to negate the possibility of intentional fraud with respect to the amount of tax liability reported. If the forms submitted show the amount of tax owed, as in this case, or otherwise permit the Service to calculate the tax liability claimed by the taxpayer, they are sufficient to be considered a "return" for purposes of section 6211(a)(1)(A).

Because of our disposition of this issue, we need not address the question of whether Sally Conforte properly raised her fifth amendment privilege against self-incrimination and, if so, whether that excused her from completing the remainder of her Form 1040s.

## IV

Sally Conforte argued to the tax court that her tax liability was to be computed under the provisions of 26 U.S.C. § 1348, commonly referred to as the maxi-tax provision. At the time of the alleged deficiencies, that section provided for a 50 percent maximum tax rate on earned income.[1] Section 1348(c) provided, however, that "[t]his section shall apply to a married individual only if such individual and his spouse make a single return jointly for the taxable year." The predicate for section 1348 treatment is the filing of a joint "return." Since the tax court had already found that the Confortes did not file a return for the years in issue, it concluded that they were not entitled to elect the section 1348 maximum tax provisions. *Conforte v. Commissioner, supra,* 74 T.C. at 1197. Again, the tax court relied on the definition of "return" established in failure-to-file cases. However, for the same reasons identified in our earlier discussion dealing with section 6211(a)(1)(A), we conclude that it is appropriate to determine congressional intent by a purpose-oriented analysis.

The purpose of the joint return requirement of section 1348(c) was to prevent deliberate manipulation by spouses who could shift all unearned income to the non-working member of the household or to the spouse with significantly lower earned income and thereby gain advantage of the lower tax rate. H.R.Rep. No. 91–413, 91st Cong., 1st Sess., *reprinted in* [1969] U.S. Code Cong. & Ad.News 1645, 1865. We fail to see how applying the return requirement used in failure-to-file cases (i.e., one that requires the showing of gross income, deductions and credits) would serve the statutory purpose of section 1348(c). That purpose is to prevent manipulation by requiring the filing of a joint return by spouses. Sally Conforte attempted to file a joint return and no manipulation of income was involved. We conclude, therefore, that her Form 1040s were returns for purposes of section 1348(c).

For the reason stated in our disposition of Sally Conforte's challenge of the fraud penalty, here too we need not address whether she is excused from completing her Form 1040s due to her assertion of her fifth amendment privilege against self-incrimination.

We cannot decide, however, on the record before us what portion, if any, of the deficiency determined by the tax court is eligible for the 50 percent maximum tax rate. We therefore remand to the tax court. Section 1348 applies only to "earned income," which was defined by section 911(b) as "wages, salaries, or professional fees, and other amounts received as compensation for personal services actually rendered."[2] Sally Conforte argues that the income she earned was attributable to her management of the Mustang Ranch and that under Treas.Reg. § 1.1348–3(a)(6), management services are specifically recognized as coming within the purview of section 1348. The Service contends that Sally Conforte's income was not from personal services rendered but rather constituted a return on the capital she had invested in the Mustang Ranch. *See Robida v. Commissioner,* 460 F.2d 1172, 1174 (9th Cir. 1972). The Service argues further that under Rule 142 of the tax court's Rules of Practice and Procedure, Sally Conforte bore the burden of proof on this issue. Since the tax court erroneously decided that Sally Conforte was ineligible for the maxi-tax because she failed to file a joint return, it did not have the opportunity to decide whether she met her burden of proof on the question of earned income. We remand this question to the tax court. If it decides that Sally Conforte has established that a portion of her income constitutes compensation for personal services actually rendered, it should also consider the applicability of the

---

1. Section 1348 has recently been repealed. Economic Recovery Tax Act of 1981, Pub.L. 97–34, Title I, § 101(c)(1), 95 Stat. 183 (Aug. 13, 1981). We, of course, must apply the law as it existed for the years 1973 through 1976.

2. The current version appears at 26 U.S.C. § 911(d)(2)(A).

30 percent limitation provided for in 26 U.S.C. § 911(b).[3]

## V

■ The final issue is whether the tax court erred in denying Sally Conforte's motion to suppress use of the grand jury material. Pursuant to rule 6(e) of the Federal Rules of Criminal Procedure, the district court released to the government all grand jury materials pertaining to the criminal investigation of the Confortes for use in the pending tax court litigation. Fed.R.Crim.P. 6(e)(3)(C)(i) authorizes a court to order disclosure of matters occurring before a grand jury for use preliminary to or in connection with a judicial proceeding. However, since there is a long-established policy to maintain the secrecy of grand jury proceedings, *see United States v. Procter & Gamble Co.,* 356 U.S. 677, 681–82, 78 S.Ct. 983, 985–86, 2 L.Ed.2d 1077 (1958), a court should order disclosure only upon a showing of particularized and compelling need. *In re Grand Jury Investigation,* 642 F.2d 1184, 1191 (9th Cir. 1981), *cert. granted,* —— U.S. ——, 102 S.Ct. 2034, 72 L.Ed.2d 483 (1982). *See Douglas Oil Co. v. Petrol Stops Northwest,* 441 U.S. 211, 222–23, 99 S.Ct. 1667, 1674–75, 60 L.Ed.2d 156 (1979).

In Sally Conforte's motion to suppress, she argued that the district court's disclosure order was improper because, among other things, the district judge failed to follow the procedures set forth in *Douglas Oil.* The tax court denied the motion to suppress on the ground that the district court had issued a valid order, but stated that Sally Conforte could object on an item-by-item basis with respect to the admissibility of any of the grand jury material. Sally Conforte made only one such objection during trial and it was sustained by the tax court. Thus, we are not asked to decide whether the tax court erred in allowing the admission into evidence of specific grand jury materials during the trial. Her objection necessarily goes to all grand jury material provided, regardless of its use. In essence, Sally Conforte's motion to suppress was a second attempt to assert her challenge to the district court's order which we refused to hear earlier because she was not a party to the proceeding in the district court. *In re Proceedings Before the Federal Grand Jury for the District of Nevada, supra.*

■ Sally Conforte has presented no authority for the proposition that the tax court, a court of limited jurisdiction, *see* 26 U.S.C. § 7442, can review, even collaterally, the validity of an order of a United States district court. Sally Conforte had the opportunity to gain such review by seeking to intervene in the district court and requesting reconsideration of the disclosure order. *See* Fed.R.Civ.P. 24; *In re Proceedings Before the Federal Grand Jury for the District of Nevada, supra,* 643 F.2d at 643. By failing to seek intervention in the district court or petitioning that court for relief from the disclosure order, Sally Conforte gave up the opportunity to challenge directly the validity of the district court's order. We hold she cannot do so collaterally before the tax court. Even so, she did not forego the opportunity to challenge the release of specific parts of the grand jury materials if the Service sought to introduce them in the tax court suit. *See SEC v. Laird,* 598 F.2d 1162, 1163 (9th Cir. 1979). By instructing Sally Conforte that she could specifically object to the use of the grand jury materials after denying her preliminary motion to suppress all use of the materials, the tax court adequately protected Sally Conforte's interests. We find no error in the tax court's denial of the motion to suppress.

**3.** For the years 1973 through 1976, section 911(b) provided in part:

> In the case of a taxpayer engaged in a trade or business in which both personal services and capital are material income-producing factors, under regulations prescribed by the Secretary or his delegate, a reasonable allowance as compensation for the personal services rendered by the taxpayer, not in excess of 30 percent of his share of the net profits of such trade or business, shall be considered as earned income.

The current version of this section appears at 26 U.S.C. § 911(d)(2)(B). The present code section is identical except for the words "or his delegate," which were removed in 1976.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED IN PART.