**James C. SARLUND, Plaintiff–Appellant,**

v.

**Jeffrey M. ANDERSON et al., Defendants–Appellees.**

**No. 99–2116.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 5, 2000

Decided Jan. 6, 2000

Opinion Feb. 29, 2000

As Amended March 10, 2000.

David E. Laster (argued), Madison, WI, for plaintiff-appellant.

Richard D. Humphrey (argued), Eric J. Callisto, Office of Attorney General, John M. Moore, Stephen Ehlke, Bell, Metzner, Gierhart & Moore, Michael J. Modl, Axley Brynelson, Madison, WI, for defendants-appellees.

Before POSNER, Chief Judge, and EASTERBROOK and RIPPLE, Circuit Judges.

POSNER, Chief Judge.

This is a suit under 42 U.S.C. § 1983 against 28 federal, state, and local law enforcement officers, who are alleged to have conspired to deprive the plaintiff of his civil rights in retaliation for his reporting the defendants' misconduct to their superiors and insisting that the defendants investigate drug offenses which he claims to have discovered while working as a confidential informant. Among the retaliatory acts that the defendants are alleged to have committed was inducing a woman to accuse the plaintiff of stalking her and to obtain an injunction against him and then to accuse him of violating it, which led, he contends, to his being prosecuted and convicted for criminal contempt and related offenses. He served a brief term in jail and afterwards, while on probation, was falsely accused of disorderly conduct. Fearing that his probation would be revoked and that he would be recommitted to jail and there murdered either by the defendants or by drug criminals whom the plaintiff had brought to justice during his time as a confidential informant—and from whose wrath the defendants, of course, refuse to protect him—the plaintiff fled Wisconsin and became, and remains, a fugitive from justice with two arrest warrants outstanding against him, one for disorderly conduct and the other for violating the terms of his probation. See *Appleyard v. Massachusetts*, 203 U.S. 222, 227, 27 S.Ct. 122, 51 L.Ed. 161 (1906); *United States v. Barnette*, 129 F.3d 1179, 1183 (11th Cir.1997); *Empire Blue Cross & Blue Shield v. Finkelstein*, 111 F.3d 278, 281 (2d Cir.1997).

■ The district court dismissed the complaint on a variety of grounds. One ground that the defendants pressed but the district judge did not rule on and that the defendants renew in this court is that the suit is barred by the "fugitive disentitlement" doctrine; the plaintiff was a fugitive when he filed the complaint and remains so. Believing that the doctrine bars the suit (including the appeal), after oral argument we ordered the appeal dismissed with directions that the district judge vacate his order dismissing the suit on the merits and dismiss it as barred by the doctrine. We said that an opinion explaining our reasoning would follow, and this is that opinion.

■ The fugitive disentitlement doctrine, as restated by the Supreme Court in *Degen v. United States*, 517 U.S. 820, 116 S.Ct. 1777, 135 L.Ed.2d 102 (1996), does not automatically disqualify a fugitive from justice from maintaining an action in a federal court. Degen was living openly in Switzerland, which refused to extradite him to the United States on the ground that the extradition treaty between the two countries did not cover his crime. Since he was living openly in a friendly nation, he was—at least so far as appeared at the early stage of the case in which it reached the Supreme Court—as amenable to the process and discipline of the U.S. courts as any other litigant in a federal court who resides in a foreign country. His fugitive status thus did not impose an unusual inconvenience on the court or his adversaries; it was an adventitious feature of his case, just as in *Ortega–Rodriguez v. United States*, 507 U.S. 234, 113 S.Ct. 1199, 122 L.Ed.2d 581 (1993), where the defendant had been returned to custody before the appeal that the government wanted dismissed was filed. See also *Magluta v. Samples*, 162 F.3d 662 (11th Cir. 1998) (per curiam). To have disqualified Degen from participating—indeed from defending, for he was the defendant in the suit, a civil suit for forfeiture—would have served only punitive purposes, and the Court thought the punishment excessive.

*Degen* as we read it shifts the emphasis from considerations of dignity, deterrence, respect, propriety, and symmetry found in a number of earlier cases (compare *Degen*, 517 U.S. at 829, 116 S.Ct. 1777, with, e.g., *Ali v. Sims*, 788 F.2d 954, 959 (3d Cir. 1986)) to the kind of practical considerations that inform the decision whether to dismiss a suit with prejudice as a sanction for mistakes, omissions, or misconduct.

See also *FDIC v. Pharaon*, 178 F.3d 1159 (11th Cir.1999); *Daccarett–Ghia v. Commissioner*, 70 F.3d 621, 627–28 (D.C. Cir. 1995). There were, so far as appeared, adequate means, short of forfeiture of Degen's defense, of protecting both his adversary and the court from the consequences of his fugitive status. Our case is different because the plaintiff's fugitive status places him entirely beyond judicial control, thus creating a situation severely prejudicial to his adversaries. Since his whereabouts are unknown, he cannot be deposed by the defendants or made to pay costs (should he lose) or attorneys' fees (should he lose and his suit be adjudged sanctionably frivolous). There is nothing to prevent him from using the litigation process to harass the defendants with impunity, and no measure that we can think of short of dismissal of his suit that will protect the defendants from such harassment. That they are or include the people responsible for the prosecution that led to his being a fugitive underscores the risk of harassment. In these circumstances the district judge should have invoked the doctrine and dismissed the suit without further ado, rather than put the defendants to the expense of defending on the merits. They may have good defenses, including official immunity; but interposing an immunity defense intended to spare the official the time costs and other expenses of pretrial discovery and trial is not costless, and of course for most officials immunity is a qualified, not an absolute, defense. We cannot find a case directly on point, but there have been a number of cases in which civil suits or appeals were dismissed because the plaintiff's or appellant's fugitive status prejudiced his adversary and no alternative protection was feasible. E.g., *United States v. Barnette, supra*, 129 F.3d at 1183–84; *Empire Blue Cross & Blue Shield v. Finkelstein, supra*, 111 F.3d at 282; *Broadway v. City of Montgomery*, 530 F.2d 657, 659 (5th Cir.1976).

The risk of abuse of process is particularly great in the present case given the number of defendants and the more than likelihood that the suit is completely frivo-lous, and not only because of the fantastic character of the allegations, which we have stated only in the most abbreviated form, omitting the garish details including alleged incessant attempts on the plaintiff's life by or with the connivance of the defendants. Many of the plaintiff's claims are barred by the *Heck* doctrine, because if sound they imply the invalidity of the plaintiff's conviction for contempt, *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994); *McCurdy v. Sheriff of Madison County*, 128 F.3d 1144 (7th Cir.1997), and by the spirit of the *Younger* doctrine, since he is trying to derail an ongoing probation revocation proceeding. *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); *Middlesex County Ethics Committee v. Garden State Bar Ass'n*, 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982); *Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc.*, 477 U.S. 619, 627, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986). The case thus echoes the earliest (and still the most common) invocation of the fugitive disentitlement doctrine, in which a convicted defendant becomes a fugitive pending appeal. E.g., *Smith v. United States*, 94 U.S. 97, 24 L.Ed. 32 (1876). If the appellate court decides the appeal in his favor, he'll return, but if it decides against him, he won't, and the decision will have been a futility. If Sarlund is a fugitive because, as he claims, he fears for his life if he returns to Wisconsin and is clapped into jail, then he won't return unless he can use the suit to keep himself out of jail.

Against all this his lawyer argues that if we invoke the fugitive disentitlement doctrine we are asking his client to choose between his life and his lawsuit. In effect though not in words the lawyer is invoking the defense of duress or necessity, which can sometimes be invoked by escaped prisoners arguing that they had to escape in order to save their life from fellow prisoners against whom the prison authorities refused to protect them. *United States v. Bailey*, 444 U.S. 394, 410–13,

100 S.Ct. 624, 444 U.S. 394 (1980); *United States v. Garza*, 664 F.2d 135, 141–42 (7th Cir.1981); *United States v. Williams*, 791 F.2d 1383, 1387–88 (9th Cir.1986); *People v. Unger*, 66 Ill.2d 333, 5 Ill.Dec. 848, 362 N.E.2d 319, 322–23 (1977); *People v. Lovercamp*, 43 Cal.App.3d 823, 831–33, 118 Cal.Rptr. 110 (1974); 1 Wayne R. LaFave & Austin W. Scott, Jr., *Substantive Criminal Law* § 5.3(b), p. 617; § 5.4(c), p. 632 (1986). But it is only a defense to a prosecution for escape after the prisoner has been returned to custody; it presupposes that he is no longer a fugitive, and indeed it requires that he have surrendered himself as soon as he reached a place of safety. Should Sarlund return to Wisconsin either voluntarily, or by being extradited once he reveals his whereabouts, and consider himself in imminent danger, he will be able to seek emergency judicial relief from state and if necessary federal judges who he does not contend have been corrupted by the defendants.

The appeal is dismissed on the basis of the fugitive-disentitlement doctrine, and the district court is directed to vacate its judgment and dismiss the suit on the basis of the doctrine.